Filed 12/26/13; pub. order 1/23/14 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DENISE DAILEY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF SAN DIEGO,<br><br>    Defendant and Respondent. | D060049<br><br><br>(Super. Ct. No. 37-2010-00094272-<br>CU-OE-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald S. Prager, Judge. Affirmed.

Law Office of Michael A. Conger, Michael A. Conger; and Richard H. Benes for Plaintiff and Appellant.

Jan I. Goldsmith, City Attorney, and Walter C. Chung, Deputy City Attorney, for Defendant and Respondent.

Plaintiff Denise Dailey (Dailey) asserts the court erred in granting the City of San Diego's (City's) motion for summary judgment on her first cause of action for declaratory relief. In that cause of action Dailey alleged that the City improperly capped her retiree

health benefit at $8,880, which she alleges is approximately $600 less than the cost of her actual premiums. She alleges that because the retiree health benefit is a benefit under the City's retirement system, an affirmative vote by all members of the City's pension system was required to implement that change. She also asserts that the court erred in sustaining the City's demurrer to her second cause of action for declaratory relief based on the doctrine of collateral estoppel because several exceptions to application of that doctrine are present in this case. In that cause of action Dailey sought to relitigate the Ninth Circuit Court of Appeals' decision in *San Diego Police Officers' Association v. San Diego City Employees' Retirement System* (2009) 568 F.3d 725, 731-732 (*SDPOA v. SDCERS*), which held that her retiree health benefit is an employment benefit, not a vested contractual right.

For reasons we shall explain in more detail, *post*, we conclude that the retiree health benefit is not a benefit under the City's retirement system, and therefore an affirmative vote by all members of the pension system was not required to implement the cap on employees' health benefit. We also conclude that Dailey's second cause of action is barred by the doctrine of collateral estoppel.

*INTRODUCTION*

In 2009 Dailey's labor union, the San Diego Police Officer's Association (POA), failed to reach agreement with defendant City on a successor memorandum of understanding regarding the wages, hours and working conditions of Dailey and all other members of the POA, and thereafter the City imposed its last, best and final offer. The imposition of this offer modified the City's postemployment health benefit.

2

Specifically, the modification to the retiree health benefit froze the maximum amount the City would reimburse members of the POA who retired during the effective term, 2009 through 2011, of the imposed memorandum of understanding at $8,880 per year. Dailey retired during the effectiveness of this imposed change.

Dailey thereafter instituted this action against the City, alleging the $8,880 per year reimbursement is approximately $600 less than the cost of her actual annual medical insurance premiums. Dailey asserted two causes of action. In her first cause of action, Dailey alleged the City's imposed change to the retiree health benefit was improper because section 143.1 of the City's Charter (Charter) requires an affirmative vote of all the members of the City's pension system before modifications can be made to her postemployment health benefit because that benefit falls under the City's retirement system.

On cross-motions for summary judgment, the Superior Court of San Diego County, the Honorable Ronald S. Prager, found that the City's retiree health benefit is not a benefit of the City's retirement system. The trial court based its decision on the fact that (1) the City's retiree health benefit is not a mandated benefit, but is provided solely at the option of the City; (2) the benefit is not funded by any assets of the City's pension plan; (3) the City and its labor unions have historically negotiated modifications to the benefit; and (4) the Ninth Circuit Court of Appeals in *SDPOA v. SDCERS, supra,* 568 F.3d 725, ruled that Dailey's retiree health benefit is an employment benefit, not a vested contractual right.

3

Because the Ninth Circuit's determination in *SDPOA v. SDCERS* rejected Dailey's argument that the City's retiree health benefit is a vested pension benefit, in her second cause of action, Dailey asserted that the trial court should disregard the decision in *SDPOA v. SDCERS* and allow Dailey to relitigate the issue of whether or not her retiree health is a vested pension benefit. The trial court sustained the City's demurrer to the second cause of action, finding that based upon the Ninth Circuit's decision in *SDPOA v. SDCERS*, collateral estoppel applied so as to bar relitigation of that cause of action.

On appeal, Dailey asserts the court erred in (1) granting summary judgment on the first cause of action because the retiree health benefit is a benefit under the retirement system, (2) not granting her cross-motion for summary judgment for the same reason, and (3) sustaining the City's demurrer as to the second cause of action because exceptions to the doctrine of collateral estoppel apply such that her claim is not barred. We affirm.

## I. FACTUAL BACKGROUND

### A. *City's Withdrawal from Social Security System*

In late 1981 the City considered withdrawing from the Social Security system. On November 4, 1981, the City Council authorized an election of the then-City employees participating in the Social Security system to vote on the City's withdrawal. If the City withdrew from the Social Security system, the City would create a new supplemental pension plan. City employees then participating in Social Security voted for the City to withdraw from the Social Security system.

On June 1, 1982, based on that vote for the City to withdraw from Social Security, the City adopted Ordinance No. 0-15758. In that ordinance, the City declared that, in lieu

4

of Social Security, certain benefits would be provided. One of those benefits was a City-sponsored group health insurance program for eligible retirees. The City stated that it intended to provide such coverage as a permanent benefit for eligible retirees.

B. *Retiree Health Program*

Ordinance No. 0-15758 amended chapter II, article 4 of the San Diego Municipal Code (SDMC) by amending section 24.0907.1 and adding section 24.0907.2 to define those retirees who were eligible for participation in the retiree health benefit program. To be eligible for the benefit, safety employees must be "[s]afety members covered by Social Security coverage as of December 31, 1981." (SDMC, § 24.0907.2, subd. (a)(3).) Dailey, however, did not begin working as a police officer for the City until 1983.

Further, in Ordinance No. 0-15758, the City reserved the right to make modifications to the retiree health program without the consent of either the City employees or those eligible for the benefit: "Health plan coverage for retirees and eligible dependents is subject to modification by the City and the provider of health care services, and may be modified periodically as deemed necessary and appropriate."

In 1985, pursuant to Ordinance No. 0-16449, Dailey's labor union, the POA, negotiated with the City concerning the terms and conditions of its members' wages, hours and working conditions with the City. As a result of those negotiations, the City agreed to expand the eligibility for retiree health benefits to include safety members not previously covered by the original adoption of the retiree health program in 1982. Specifically, Ordinance No. 0-16449 amended SDMC section 24.0907.2, subdivision (a) to add subdivision (a)(4), to include "[a]ll other safety members effective July 1, 1985,"

5

to the definition of those persons eligible for the retiree health program. Thus, the expanded definition of persons eligible for postemployment health benefits now included Dailey.

However, unlike the original retiree health ordinance, Ordinance No. O-16449 did *not* state that the inclusion of new eligible employees to the City's retiree health program was intended to be a permanent benefit. Ordinance No. 0-16449 also did not amend SDMC section 24.0907.2 to remove the City's right to periodically modify the retiree health program without the consent of City employees or those eligible for the program. Following the expansion of eligibility of the retiree health program to include employees such as Dailey, SDMC section 24.0907.2 still retained the language "[h]ealth plan coverage for eligible retirees and eligible dependents is subject to modification by the City and the provider of health care services, and may be modified periodically as deemed necessary and appropriate."

In the general election of 1996, pursuant to Proposition D, the voters of the City were asked to approve an amendment to the City's Charter "to authorize the City Council to provide [retiree health] benefits through the San Diego City Retirement System" instead of "directly from the City's operating funds, as is the current practice." The ballot for this proposition stated: "Proposition D would change the City Charter to permit shifting this costly item from the city's General Fund paid by all taxpayers—to the city's retirement system, *paid for by the retirement system's investment earnings and assets.* This shift would save city taxpayers between $5 million and $6 million each year."

6

(Italics added.) Proposition D passed, receiving 231,410 votes in favor and 88,537 votes against.

      C. *Negotiated Changes to the Retiree Health Program*

In 1997 all of the City's labor unions met and conferred with the City regarding potential changes to the amount the City would reimburse retirees for their retiree health benefits. On "February 6,1997, a task force of the four labor organizations reached agreement with the City Management Team on the level of health benefits to be provided by the Retirement System." The agreed-upon changes to the retiree health benefit were implemented pursuant to Ordinance No. 0-18392.

In 2002 the City and its four labor unions, including Dailey's labor union, again met and conferred regarding potential changes to the retiree health benefit, and thereafter "the four labor organizations . . . reached an agreement with the City Management Team on the level of health benefits to be provided to Health Eligible Retirees . . . ."

In Ordinance No. 0-19121, retiree health benefits are not referred to as retirement benefits. Rather, the retirement benefits and retiree health benefits are listed as separate items: "WHEREAS, the City Council has approved the agreements on *retirement benefits* and *retiree health benefits*; and [¶] WHEREAS, the Municipal Code must now be amended to reflect the changes to *retirement benefits* and *retiree health benefits* approved by the City Council . . . ." (Italics added.)

In August 2005 the City and the POA engaged in labor negotiations related to a successor memorandum of understanding addressing the POA members' wages, hours and working conditions. (*SDPOA v. SDCERS, supra,* 568 F.3d at pp. 731-732.) The

7

POA and the City were unable to agree on a successor memorandum of understanding. (*SDPOA v. SDCERS, supra,* 568 F.3d at p. 732.) Accordingly, the City imposed its last, best and final offer on the POA. (*Ibid.*) The imposition included changes to the retiree health benefits of the members of the POA.[1]

D. *Federal Court Litigation*

As a result of the City imposing its last, best and final offer, the POA, on behalf of Dailey and all its other members, sued the City in federal court. In that action the POA alleged that the City's "Last, Best and Final Offer unlawfully deprived, eliminated and reduced Member's vested benefits, including but not limited to the following [¶] . . . [¶] (c) capping and limiting Retiree Medical Benefits in a manner that deprives Plaintiff Members of medical benefits equal to those of social security recipients during their lifetime, contrary to the voters' mandate in 1981 as set forth herein and in violation of Defendant City's Social Security Opt-out Agreement."

In 2007 the United States District Court for the Southern District of California, the Honorable Marilyn L. Huff, issued a ruling granting the City's motion for summary judgment and denying the POA's motion for summary judgment. On the question of whether the City's retiree health benefit was a vested contractual right that the City

---

[1]     The City has requested that we take judicial notice of several documents, including a meet-and-confer proposal, City resolutions and City ordinances that were not made part of the record on appeal. Dailey has opposed that request, asserting it is improper because those items occurred after the judgment was entered in this case. We grant the request for judicial notice because we may take judicial notice of postjudgment legislative changes that are relevant to an appeal. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶¶ 8:182 to 8:188, pp. 8:137 to 8:141 (rev. #1, 2009).)

8

impermissibly violated when, in 2005, the City imposed its last, best and final offer, the District Court, relying on California substantive law, held that the City's retiree health benefit is not a vested right subject to protection by the contracts clause of the United States Constitution.

Thereafter, the POA filed an appeal of the District Court's decision with the Ninth Circuit Court of Appeals, and the Ninth Circuit upheld the District Court's decision. (*SDPOA v. SDCERS, supra,* 568 F.3d. at pp. 731-732.) The Ninth Circuit held that the City's retiree health benefit is an employment benefit, not a vested pension benefit. (*Id.* at p. 740.)

E. *IRS Settlement*

In 2008, following a review of the City's pension plan by the Internal Revenue Service (IRS), which was voluntarily initiated by SDCERS, the IRS found several benefits that did not comply with the Internal Revenue Code and jeopardized the tax-exempt qualification of the City's pension plan.

As to the City's retiree health benefit, the IRS found two failures. The IRS found that in failure No. 6 that "[d]uring the plan years that ended in 1983 through 1991 retiree health benefits were paid by the Plan even though the terms of the Plan did not provide for such benefits." The IRS also found in failure No. 7 that "[d]uring the plan years that ended in 1998 through 2005 the terms of the Plan and its operation did not comply with all of the requirements of [SDMC] sections 401[, subdivision] (a)(2) and 401[, subdivision] (h) as they relate to retiree health benefits because the terms of the Plan

9

provided that earnings of the trust would ultimately be used to fund these benefits resulting in the underfunding of the Plan."

In order to correct these (and other) violations so that the IRS would not seek monetary penalties and/or seek to disqualify the City's pension plan's tax exempt status, the City and SDCERS entered into a settlement with the IRS.

With regard to the retiree health benefit, the City corrected failure No. 6 by reimbursing SDCERS for the $33,830,251 in health care premium reimbursements improperly made from the assets of the pension plan since 1983. Addressing failure No. 7, the City and SDCERS agreed that "in order to comply with all of the requirements of [SDMC] sections 401[, subdivision] (a) and 401[, subdivision] (h) the payment of retiree health benefits must be funded by separately designated employer contributions and cannot be funded (directly or indirectly) from pension assets, including plan earnings." The IRS also required the City to amend its pension plan documents to retroactively remove any provisions that allowed for reimbursement of retiree health premiums from pension plan assets.

On April 28, 2008, the City adopted Ordinance No. O-19740, which implemented all the corrections required by the IRS pursuant to the settlement. For example, as to the retiree health benefit, Ordinance No. 0-19740 repealed several sections of the SDMC which provided funding for the retiree health benefit from pension plan assets. Ordinance No. 0-19740 repealed SDMC sections 24.1310, subdivision (c) and 24.1402, subdivision (b)(9) retroactively to their enactment on July 1, 2002. Ordinance No. O-

10

19740 also repealed SDMC section 24.1502, subdivision (a)(5) retroactively to its effective date of July 1, 2005.

Ordinance No. O-19740 amended SDMC section 24.1204, which states, "[t]he retiree health benefits described in this Division will be paid by the City, directly, from any source available to it other than the [pension] Plan."

F. *2009 Negotiations*

In 2009 the City once again engaged in negotiations with its labor unions regarding successor memorandums of understanding. Some of the City's labor unions reached an agreement with the City with regard to changes to the retiree health benefit. For example, members of the San Diego Municipal Employees' Association and the City's firefighter's union agreed to a two-year freeze on any annual adjustment to the maximum payment or reimbursement level for the retiree health benefit.

However, the City did not reach agreement with the POA or the American Federation of State, County and Municipal Employees, Local 127. Accordingly, the City imposed its last, best and final offer on the members of these two unions. As part of the imposition of the City's last, best and final offer, effective July 1, 2009, any member of these two unions who retired during the effectiveness of the imposed memorandums of understanding had their retiree health benefit "frozen at the Fiscal Year 2009 level of $740.00 a month/$8,880.00 a year."

The City acknowledged that the freezing of the retiree health benefit was not permanent and could be changed by the City: "The freezing of the Health Eligible Retiree benefit at the Fiscal Year 2009 level may be subject to modification by the City

11

pursuant to procedures governed by the Meyers-Milias-Brown Act or any other legal requirements governing labor relations that are binding upon the City."

G. *Dailey Retires*

Dailey retired from the City on January 1, 2010. As Dailey was a member of the POA and she retired during the effectiveness of the imposed memorandum of understanding, her maximum annual retiree health benefit is set at $8,880 per year.

H. *2011 Negotiations*

Between February and June 2011, the City and the POA met and conferred regarding changes to the retiree health benefit. On June 10, 2011, the City and the POA reached a tentative agreement. On July 6, 2011, by resolution, the City approved the tentative agreement.

Though the City disputed the need for a vote under Charter section 143.1 to enact the changes to the retiree health program agreed to in the tentative agreements with all of the City's labor unions, a vote of the City's employees was conducted.

Following a successful vote, on February 17, 2012, by ordinance, the City approved 15-year memorandums of understandings related to the retiree health program with all of its recognized labor organizations. Per the agreed-upon terms, beginning April 1, 2012, three new postemployment health options were provided to retiring employees. Also, per the terms of the agreements, it was agreed that future modifications affecting the retiree health program would not be subject to a vote of the members under Charter section 143.1.

12

## II. *PROCEDURAL BACKGROUND*

### A. *The City's Demurrer*

On June 15, 2010, Randon Levitt, filed the underlying action. Levitt's complaint contained a single cause of action that sought a judicial declaration that the City's enactment of Ordinance No. 0-19874 was invalid, as Charter section 143.1 required a vote of the members of the retirement system approving any changes to the retiree health benefit and no vote was conducted.

The City responded by filing a demurrer to Levitt's complaint. One argument made by the City in its demurrer was that there existed no actual controversy because Levitt had not yet retired. In support of this argument, the City pointed out that Ordinance No. 0-19874 stated, "[t]he freezing of the Health Eligible Retiree benefit at the Fiscal Year 2009 level may be subject to modification . . . ."

In response to the demurrer, Levitt filed a first amended complaint naming Dailey, who (as noted, *ante*) retired in 2010, as an additional plaintiff.

The City filed a demurrer to Dailey's first amended complaint. On January 21, 2011, the court overruled the City's demurrer to Dailey's first cause of action. The trial court sustained without leave to amend the City's demurrer to Dailey's second cause of action, which, as noted, *ante*, requested that the court disregard the Ninth Circuit's decision in *SDPOA v. SDCERS.* The court found that claim was barred by the doctrine of collateral estoppel.

13

B. *Motions for Summary Judgment*

Thereafter, the City filed a motion for summary judgment as to Dailey's first cause of action. Dailey also filed a motion for summary judgment on her first cause of action.

On April 28, 2011, the court, the Honorable Ronald S. Prager, granted the City's motion for summary judgment and denied Dailey's motion for summary judgment. In doing so, the court found, for several reasons, that retiree health is not a benefit under the retirement system. First, the court addressed Dailey's argument that because retiree health benefits were placed in sections of the City Charter and the SDMC entitled "The Retirement of Employees" and "City Employees' Retirement System," they were a "benefit under the retirement system." The court found that title or chapter headings are unofficial and may only be considered in determining legislative intent if the statute is ambiguous. The court also found that such benefits are not under the retirement system—"retiree health benefits are separate, additional benefits that are provided at the option of the City." The court also found that "it makes no sense to find that retiree health benefits are a benefit under the Retirement System which requires a [Charter] section 143.1 vote when the benefit is subject to negotiation under collective bargaining." The court also found that the retiree health program is not a benefit under the retirement system merely because it is enjoyed during retirement because "[i]t is undisputed that not all postemployment benefits for City employees are benefits under the Retirement System." The court also relied on the Ninth Circuit's decision in *SDPOA V. SDCERS* holding such retirement benefits were not protectable contract rights.

14

This timely appeal follows.[2]

DISCUSSION

I. *THE MOTIONS FOR SUMMARY JUDGMENT*

As noted, *ante*, in her first cause of action Dailey sought a judicial declaration that Ordinance No. 0-19874 is invalid, including its monetary cap on her annual retiree health benefit. Dailey contended that her retiree health benefit is a benefit "under the retirement system," and thus, an affirmative vote of the members of the retirement system pursuant to Charter section 143.1(a) was required before the ordinance and the cap on her retiree health benefits could become effective. We reject this contention as the retiree health benefit is not a benefit under the City's retirement system.

A. *Standards Governing Summary Judgment Motions*

A defendant moving for summary judgment bears the burden of persuasion to show either (1) one or more elements of the plaintiff's cause of action cannot be established or (2) there is a complete defense to that cause of action. (Code Civ. Proc.,[3] § 437c, subds. (o), (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) When the motion is based on the assertion of an affirmative defense, the defendant has the initial burden to demonstrate that undisputed facts support each element of the affirmative defense. (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289.) "The

---

[2]     Levitt did not appeal.

[3]     All further undesignated statutory references are to the Code of Civil Procedure.

15

defendant must demonstrate that under no hypothesis is there a material factual issue requiring trial. [Citation.] If the defendant does not meet this burden, the motion must be denied. Only if the defendant meets this burden does 'the burden shift[] to plaintiff to show an issue of fact concerning at least one element of the defense.'" (*Id*. at pp. 289-290.)

On appeal, we independently review the trial court's decision, considering all of the evidence in the supporting and opposing papers and apply the same standard as the trial court. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037; *Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at p. 334.) We liberally construe the evidence in support of the opposing party, resolving doubts concerning the evidence in its favor (*Yanowitz*, at p. 1037; *Wiener v. Southcoast Childcare Centers, Inc*. (2004) 32 Cal.4th 1138, 1142) and assess whether the evidence would, if credited, permit the trier of fact to find in its favor under the applicable legal standards. (Cf. *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) We do not weigh the evidence and inferences, but merely determine whether a reasonable trier of fact could find in the opposing party's favor, and we must reverse the order granting summary judgment when there is some evidence that, if believed, would support judgment in its favor. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139.)

B. *Analysis*

Charter section 143.1(a) states that "[n]o ordinance amending the retirement system which affects the benefits of any employee *under such retirement system* shall be adopted without the approval of a majority vote of the members of said system." (Italics

16

added.) "Retirement System" is defined in the Municipal Code as "the City Employees' Retirement System as created by [article 4]." (SDMC, § 24.0103.) Thus, in order for the voting requirement of Charter section 143.1(a) to apply, the benefit in question must be a benefit under the City's retirement system.

We conclude, for several reasons, the trial court correctly determined that the retiree health benefit is not a benefit under the retirement system, and thus Charter section 143.1 was not applicable. First, as the trial court noted, retiree health benefits are separate, additional benefits that are provided at the *option* of the City. (Charter, § 141.) Charter section 141 *allows* the City to provide health insurance benefits for retirees but does not mandate that these benefits be included in the City's retirement system.

Further, the City's retiree health benefit is not funded in the same manner or method as retirement benefits. The City's monetary contributions to fund Dailey's retiree health benefit is not placed in the City employees' retirement fund at SDCERS. (See Charter, §§ 144, 145; SDMC, § 24.1204.) Thus, the City's monetary contributions for Dailey's retiree health benefit are not managed or invested by the City's pension plan administrator, SDCERS. (See Charter, §§ 144, 145; SDMC, § 24.1204.)

Additionally, as the trial court found, retiree health is not a benefit under the retirement system; it is an employment benefit that is renegotiated every few years by the City's labor organizations and the City. In *SDPOA v. SDCERS*, the Ninth Circuit, applying California case law, determined that Dailey was only entitled to retiree health benefits insofar as those benefits are contained in an applicable collective bargaining agreement at the time of the Dailey's retirement. (*SDPOA v. SDCERS, supra,* 568 F.3d at

17

p. 740.)  Thus, as the trial court concluded, "it makes no sense to find that retiree health benefits are a benefit under the Retirement System which requires a [Charter] section 143.1 vote when the benefit is subject to negotiation under collective bargaining."

Furthermore, the retiree health program is not a benefit under the retirement system merely because it is enjoyed during retirement.  As the trial court found, "[i]t is undisputed that not all post-employment benefits for City employees are benefits under the Retirement System."  For example, the City offers a supplemental pension plan for certain employees that is not established under the retirement system.  The City also offers a defined contribution retirement savings plan, which is established under Internal Revenue Code section 401(k), not under the retirement system.

Dailey's retiree health benefit is also not a benefit under the retirement system because of where "Division 12:  Retiree Health Benefits" can be found in the SDMC. (Charter, § 141; Ord. No. O-19740; SDMC, § 24.1204.)  It is true that Charter section 141 and article 4 of the SDMC are entitled "City Employees' Retirement System." However, that does not make retiree health a benefit under the Retirement System.  As the trial court noted, "[t]itle or chapter headings are unofficial and do not alter the explicit scope, meaning, or intent of a statute."  (See *County of San Diego v. Alcoholic Beverage Control Appeals Bd.* (2010) 184 Cal.App.4th 396, 403; *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1119.)  Section headings may only be considered in determining legislative intent when the statute is ambiguous.  (See *Woodland Park Management, LLC v. City of East Palo Alto Rent Stabilization Board* (2010) 181

18

Cal.App.4th 915, 923, fn. 5.)  Dailey did not argue in the trial court that an ambiguity exists and, in fact, at oral argument stated that no ambiguity existed.

The imposition of a monetary freeze on Dailey's annual retiree health benefit was also allowed pursuant to the terms of the ordinance that expanded the group of eligible persons to include Dailey.  As we have discussed, in 1985, pursuant to Ordinance No. 0-16449, the City agreed to expand the definition of the persons eligible for retiree health benefits to include safety members, such as Dailey.  As it did in the original retiree health ordinance, the City continued to reserve its right to modify or alter the benefit:  "Health plan coverage for eligible retirees and eligible dependents is subject to modification by the City and the provider of health care services, and may be modified periodically as deemed necessary and appropriate."

Thus, Dailey's assertion that the City intended for the retiree health benefit to be a permanent benefit that could not be changed without a vote by Dailey and all other members of the City's pension system conflicts with the express terms of the ordinance enacting the retiree health program and the ordinance expanding eligibility to include Dailey.  As the City reserved the right to make unilateral modifications to the retiree health program itself, Dailey's assertion that the City intended for the retiree health program to be a permanent benefit such that the City could not modify the benefit without Dailey's consent is unavailing.

Moreover, contrary to Dailey's assertion, the City did not "declare" in 2007, through Ordinance No. 0-19566, that retiree health is a benefit under the retirement system.  Rather, when SDMC section 24.1902 was amended, Ordinance No. 0-19566 set

19

forth all items that might cause an increase in retirement system benefits. At that time, "a change in retiree health benefits" was included because retiree health benefits were being funded (improperly and illegally) by assets of the retirement system. The IRS determined that payment of the retiree health benefit from pension funds was unlawful. The IRS also determined that "[d]uring the plan years that ended in 1998 through 2005 the terms of the Plan and its operation did not comply with all of the requirements of [SDMC] sections 401[, subdivision] (a)(2) and 401[, subdivision] (h) as they relate to retiree health benefits because the terms of the Plan provided that earnings of the trust would ultimately be used to fund these benefits resulting in the underfunding of the Plan." The IRS found that, beginning July 1, 2005, the City had been directly paying for retiree health without utilizing any retirement system assets.

As part of the IRS's voluntary correction program, the City, as required by the IRS, retroactive to the date of its adoption, rescinded the transfer of the retiree health liability. In this regard, SDMC section 24.1204 was amended to expressly provide that "[t]he retiree health benefits described in [Division 12: Retiree Health Benefits] will be paid by the City, directly, from any source available to it *other than the Plan.*" as (Italics added.)

As the IRS determined, the City's attempt to transfer payment of the retiree health benefit to the retirement system was contrary to the law as pension plan assets legally cannot be used to pay for retiree health. Therefore, contrary to Dailey's contention, in 2007 the City did not and legally could not have "declared" the retiree health benefit to be a benefit under the retirement system through enactment of Ordinance No. O-19566.

20

Dailey asserts that the City's past practices of allowing SDCERS to conduct a Charter section 143.1 vote on retirement and retiree health changes is evidence that retiree health benefits are a benefit under the retirement system. We reject this contention.

All of the occasions that Dailey cites as evidence that the City has historically agreed that a vote is needed for changes to retiree health benefits are occasions where changes to retiree health benefits were *included with changes to retirement benefits*, which required a vote. Dailey has not cited any occasion where there was a vote of the membership of the retirement system exclusively for changes to retiree health benefits. This is because the City has historically distinguished retiree health benefits from retirement benefits: "[T]he City Council has approved the agreements on retirement benefits *and* retiree health benefits." (Italics added.)

Dailey contends that SDCERS's administration of the retiree health benefit makes it a pension benefit. This contention is unavailing.

In *City of San Diego v. San Diego City Employees' Retirement System* (2010) 186 Cal.App.4th 69, 79, we held that the granting of retirement benefits is a legislative action within the exclusive jurisdiction of the City. We further held that "[t]he scope of the [SDCERS] board's power as to benefits is limited to administering the benefits set by the City." (*Id.* at p. 80.) Therefore, because SDCERS's actions are limited to administering the retiree health benefit, it cannot *create* a benefit.

In *San Diego City Firefighters, Local 145 v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 620, we similarly held that "the SDCERS Board does not have the

21

authority to create a right to receive benefits under the SDCERS." We held that SDCERS's "'role is limited to administering the retirement system created by City.'" (*Ibid.*.)

Therefore, SDCERS's administration of the retiree health benefit since 1982 did not convert the benefit into a benefit of the retirement system.

Dailey's argument that retiree health is a benefit under the retirement system also lacks merit because Dailey did not become eligible for the retiree health program as a result of the City's withdrawal from the Social Security system. She began her employment *after* the City had already opted out of Social Security and she became eligible for retiree health benefits solely as a result of labor negotiations between her union and the City. Therefore, she did not receive any entitlement to her retiree health benefit as a direct result of the City withdrawing from the Social Security system.

Thus, the trial court correctly found that "retiree health benefits are separate, additional benefits that are provided at the option of the City."

The fact that Dailey's retiree health benefit is an employment benefit, not a benefit under the retirement system, is supported by the fact that since 1985, when Dailey became eligible to participate in the retiree health program, the City and its labor unions have continued to negotiate over modifications to the retiree health program. For example, in 1997, "a task force of the four labor organizations reached agreement with the City Management Team on the level of health benefits to be provided by the Retirement System." In 2002, once again after meeting and conferring, "the four labor organizations . . . reached an agreement with the City Management Team on the level of

22

health benefits to be provided to Health Eligible Retirees." Again, in that ordinance, retiree health benefits are specifically not referred to as retirement benefits. Rather, the retirement benefits and retiree health benefits are listed as *separate* items: "WHEREAS, the City Council has approved the agreements on retirement benefits and retiree health benefits; and [¶] WHEREAS, the Municipal Code must now be amended to reflect the changes to retirement benefits *and* retiree health benefits approved by the City Council." (Italics added.)

Thus, as the trial court concluded, "[I]t makes no sense to find that retiree health benefits are a benefit under the Retirement System which requires a [Charter] section 143.1 vote when the benefit is subject to negotiation under collective bargaining."

Because Dailey's retiree health benefit is an employment benefit, the City was legally allowed to impose modifications to this benefit because, as the Meyers-Milias-Brown Act provided in 2009, "[i]f after meeting and conferring in good faith, an impasse has been reached between the public agency and the recognized employee organization, and impasse procedures, where applicable, have been exhausted, a public agency that is not required to proceed to interest arbitration may implement its last, best, and final offer . . . ." (Former Gov. Code, § 3505.4, repealed eff. Jan. 1, 2012.)[4] Allowing Dailey and the City's other employees to vote on whether or not to approve modifications to

---

4    Former Government Code section 3505.4 has now been replaced by Government Code section 3505.7, which provides in part: "After any applicable mediation and factfinding procedures have been exhausted, . . . a public agency that is not required to proceed to interest arbitration may, after holding a public hearing regarding the impasse, implement its last, best, and final offer . . . ."

23

terms of employment the City can impose before they become effective would thus conflict with the Meyers-Milias-Brown Act.

The City is a charter city. (*Grimm v. City of San Diego* (1979) 94 Cal.App.3d 33, 37.) The charter is the supreme law of a charter city, subject only to conflicting provisions in the federal and state constitutions and to conflicting provisions of preemptive state law. (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 170.) Article XI, section 7 of the California Constitution provides that a "city may make and enforce within its limits all local, police, sanitary and other ordinances and regulations *not in conflict* with general laws." (Italics added.)

The Meyers-Milias-Brown Act is a general law that is of statewide concern with which the City's Charter cannot conflict because the Legislature intended for the Meyers-Milias-Brown Act to regulate the entire field of labor relations of affected public employees. (*San Leandro Police Officers Assn. v. City of San Leandro* (1976) 55 Cal.App.3d 553, 557.) The California Supreme Court has held that "[i]t is indisputable that the procedures set forth in the [Meyers-Milias-Brown Act] are a matter of statewide concern, and are preemptive of contradictory local labor-management procedures." (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 781.)

Accordingly, because Government Code section 3505.4 addresses a matter of statewide concern, Dailey's contention that a Charter section 143.1(a) vote is required before any changes to the retiree health benefit can become effective would allow members of the City's pension plan to ultimately veto changes to the retiree health benefit that the City can legally impose. Dailey's argument, therefore, necessarily requires

24

Charter section 143.1 to conflict with the Meyers-Milias-Brown Act. Since, the City's Charter cannot preempt the Meyers-Milias-Brown Act on this issue, the only way to harmonize Charter section 143.1 and the Meyers-Milias-Brown Act is to find that retiree health is not a benefit under the retirement system, and thus, is not subject to a Charter section 143.1(a) vote.

Based upon statutory preemption principles, Dailey's argument fails, as the right of the City to make changes to the retiree health program conditioned on Dailey and other members of the pension system affirmative vote would conflict with the City's right to impose changes if the parties reach an impasse.

## II. *THE DEMURRER*

Following the City's imposition of its last, best and final offer in 2009, Dailey instituted this action seeking a judicial declaration that the City imposition of that offer was an unconstitutional impairment of a vested contractual right. Specifically, in Dailey's second cause of action she sought to relitigate the decision of the Ninth Circuit in *SDPOA v. SDCERS*, which held that the City's imposition of a monetary freeze of her annual retiree health benefit at $8,880 per year, as part of City's last, best and final offer and codified by Ordinance No. O-19874, was *not* an unconstitutional impairment of a vested contractual right. Dailey contended that the District Court and the Ninth Circuit's decisions in *SDPOA v. SDCERS* were erroneous.

A. *The Doctrine of Collateral Estoppel Applies*

On appeal, Dailey concedes that all the elements for collateral estoppel exist. Specifically, Dailey concedes that she was in privity with the POA, the plaintiff in

25

*SDPOA v. SDCERS, supra,* 568 F.3d 725, there was a final judgment on the merits in that prior action, and the issue litigated in the prior action is identical to the issue contained in Dailey's second cause of action. (See *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1201, fn. 1.)

Therefore, unless an exception to the collateral estoppel doctrine applies, collateral estoppel bars Dailey's second cause of action. However, as we shall explain, no exception applies to the facts of this case.

1. *Application of the doctrine of collateral estoppel is not "unfair"*

On appeal, Dailey asserts that, in the prior litigation, the POA had no incentive to vigorously litigate its own cause of action related to the retiree health benefit because the amount at stake was "de minimus" and future litigation was not foreseeable. Thus, Dailey argues, it was not "fair" to invoke the doctrine of collateral estoppel to prevent Dailey from attempting to prove her claim against the City.

However, the authorities Dailey cites in support of her argument discuss the *offensive* use of collateral estoppel. Here, however, the City asserted the doctrine of collateral estoppel *defensively.* "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" (*Parklane Hosiery Co. v. Shore* (1979) 439 U.S. 322, 329.)

"[W]here collateral estoppel is applied 'offensively' to preclude a defendant from relitigating an issue the defendant previously litigated and lost, the courts consider whether the party against whom the earlier decision is asserted had a 'full and fair' opportunity to litigate the issue." (*Roos v. Red* (2005) 130 Cal.App.4th 870, 880.) An

26

"argument against offensive use of collateral estoppel is that it may be unfair to a defendant. If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable." (*Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at 330.)

In her complaint, Dailey admits that she seeks the exact same relief based on the exact same allegations previously made by the POA. As the City prevailed in the prior action and the plaintiff in this action is a subset of the plaintiff in the prior action, the City was entitled to assert the doctrine of collateral estoppel defensively so as to preclude Dailey from forcing it to relitigate identical issues by merely switching adversaries. Thus, Dailey's "fairness" exception to the collateral estoppel rule does not apply.

Moreover, even if the fairness rule applies to the defensive use of collateral estoppel, the trial court correctly found that collateral estoppel barred Dailey's second cause of action.

a. *The amount at stake in the prior litigation was not "nominal"*

In the prior litigation, the imposed change to the retiree health benefit involved a change in service eligibility that "established service qualifications of 10 years for a 100% benefit and 5 years for a 50% benefit." (*SDPOA v. SDCERS, supra,* 568 F.3d at p. 739.)

Dailey asserts that because a City employee cannot retire until he or she has at least 10 years of service, a 50 percent reduction in the retiree health benefit for police officers who only have five years of service would result in little to no impact on any member of the POA because they cannot retiree with just five years of service. Thus,

27

according to Dailey, the amount in controversy in the prior litigation was nominal. This contention is unavailing.

The service eligibility requirements the City imposed pertained to all police officers who had pension service from a prior employer who had a reciprocity agreement with the City that allowed pension service accrued at another agency to count toward pensionable service time at the City. Under the service eligibility modification to the retiree health program, in order to qualify for a 50 percent retiree health benefit, a member of the POA had to have worked at least five years for the City. A full retiree health benefit required 10 years of actual service at the City.

Because members of the POA potentially lost half of the retiree health benefit unless and until they actually worked five years for the City and would not receive the full benefit unless and until they worked 10 years for the City, the POA, on behalf of its members, had incentive in the prior litigation to seek a ruling that the imposition of these changes in the service eligibility requirements was invalid. Indeed, the fact the City had requested this change to the retiree health benefit, but the POA would not agree to it, shows that the benefit had substantial value to the members of the POA. Therefore, contrary to Dailey's unfounded argument, the POA, on behalf of its members, had every incentive in the prior litigation to find the imposition of the change in service eligibility requirements to be unlawful.

b. *Failure to introduce alleged evidence in the prior action*

Dailey contends that because the POA's attorneys in the prior action failed to introduce evidence that she alleged, in this action, would have supported a finding that

28

the retiree health benefit is a vested contractual benefit, relitigation of the issue was proper in this case.

As the California Supreme Court has held, "'[i]t is the *opportunity to litigate* that is important in these cases, not whether the litigant availed himself or herself of the opportunity.'" (*Murray v. Alaska Airlines* (2010) 50 Cal.4th 860, 869.) Indeed, in *Murray* our high court rejected this very argument made by Dailey: "'The failure of a litigant to introduce relevant available evidence on an issue does not necessarily defeat a plea of collateral estoppel. [Citation.] Even a judgment of default in a civil proceeding is "res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint."'" (*Id.* at p. 871.) Thus, whether or not Dailey believes additional evidence should have been submitted does not create an exception to the collateral estoppel doctrine.

c. *The public interest exception to the doctrine of collateral estoppel*

Dailey also contends that collateral estoppel should not be applied because of the effect it will have on a great many City employees, including herself, who were not parties to the prior litigation. Dailey argues that the City has taken the decision by the Ninth Circuit and "parlayed" that into a $142 million windfall. Therefore, Dailey argues, there is a great public interest in allowing Dailey to relitigate the issue of whether or not the City's retiree health benefit is a vested contractual right.

However, "[t]he public interest exception [to collateral estoppel] is an extremely narrow one; we emphasize that it is the exception, not the rule, and is only to be applied in exceptional circumstances." (*Arcadia Unified School Dist. v. State Dept. of Education*

29

(1992) 2 Cal.4th 251, 259.)  For example, in *Arcadia*, the California Supreme Court only approved application of the exception because if the action were barred, "the state of the law on a matter of statewide importance would remain permanently unclear and unsettled."  (*Ibid.*)

Here, the facts do not support application of this exception.  First, the issue involved here is not one of statewide importance.  Second, the $8,880 annual premium reimbursement cap on Dailey's retiree health benefits expired on April 1, 2012.  The freeze, therefore, was only in effect for members of the POA or Local 127, American Federation of State, County and Municipal Employees, who retired between July 1, 2009 and before April 1, 2012.  (SDMC § 24.1202, subd. (b)(7).)  Therefore, the persons affected by the prior Ninth Circuit decision is a small subset of the City's employees.  Third, following the entry of judgment by the trial court and prior to the Dailey filing her opening brief, all of the City's labor unions, including the POA, agreed to and entered into contracts that modified the retiree health program for the next 15 years.  Effective April 1, 2012, every single City labor union, including the POA, voluntarily agreed to a new 15-year memorandum of understanding regarding the retiree health benefit.  Therefore, the $8,880 per year freeze of retiree health benefits contained in Ordinance No. 0-19874 no longer applies.

"[T]he public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy"

30

(*Lucido v. Superior Court* (1990) 51 Cal.3d. 335, 343) all support the trial court's decision to afford the prior litigation collateral estoppel in this matter.

The integrity of the court system is maintained by affording the prior decision collateral estoppel effect in this action as the prior decision of the federal courts was not erroneous. Neither the district court nor the Ninth Circuit were presented with any evidence that Dailey or other police officers surrendered their Social Security rights in 1982 in exchange for a promise of retiree health care benefits. This is because Dailey's own evidence shows that members of the POA never even voted in the City's election to withdraw from the Social Security system. Therefore, neither Dailey nor any other member of the POA gave up their rights to Social Security because they did not participate in Social Security. Rather, Dailey gained the ability to participate in the retiree health program as a result of labor negotiations.

Dailey's claim of legal malpractice by the POA's attorneys in the prior case, as alleged in *Ellis v. Jackson, DeMarco, Tidus, Peckenpaugh* (Super. Ct. San Diego San Diego County 2010, No. 37-2010-00086284-CU-PN-CTL), does not change the outcome. This is so because the alleged claims of malpractice have been settled with Dailey receiving monetary compensation in exchange for dismissing her claims. Barring Dailey from relitigating the cause of action for which she has now received monetary compensation based on allegations of malpractice protects the integrity of the judicial system.

The resolution of the malpractice claim also defeats Dailey's claim that the promotion of judicial economy, the second of the three doctrinal purposes of collateral

31

estoppel, is not served because the issue was necessarily going to be relitigated in the malpractice case. As that case has been resolved without any admission of liability and without a determination of whether or not retiree health is a vested contractual right, Dailey's argument that relitigation of the claim was inevitable in the malpractice case does not now support her claim that judicial economy would have been served by allowing Dailey to relitigate the issue in this case. As the trial court found, "it is improper to adjudicate [Dailey's] alleged malpractice of its former attorneys [in this action] as declaratory relief only operates prospectively to declare future rights, rather than to redress past wrongs. [Citation.] In addition, declaratory relief is only appropriate where there is a justiciable controversy, no where the dispute is moot, or only hypothetical or academic. [Citations.] Here, the alleged malpractice of [Dailey's] former attorney[] is not yet a fact but is a mere conclusion of law or hypothetical."

Third, the trial court's determination that collateral estoppel applied promoted the third doctrinal purpose of collateral estoppel: protecting the City from harassment by vexatious litigation. After five years of litigation with the POA, making the City expend time, energy, money and resources to defend the exact same case in this action is an example of precisely the type of vexatious litigation the doctrine of collateral estoppel was designed to prevent.

Thus, all the purposes of collateral estoppel were promoted by the trial court deciding that Dailey was barred from relitigating whether or not retiree health is a vested contractual right. Therefore, the trial court did not err when it sustained the City's demurrer to Dailey's second cause of action.

32

DISPOSITION

The judgment is affirmed.  The City shall recover its costs on appeal.

                                                                            NARES, J.

WE CONCUR:


HUFFMAN, Acting P. J.


HALLER, J.

Filed 1/23/14

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DENISE DAILEY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF SAN DIEGO,<br><br>    Defendant and Respondent. | D060049<br><br><br>(Super. Ct. No. 37-2010-00094272-CU-OE-CTL)<br><br>ORDER DENYING REHEARING AND CERTIFYING OPINION FOR PUBLICATION |


THE COURT:

Appellant's petition for rehearing is denied.

The opinion in the above-entitled matter filed on December 26, 2013, was not

certified for publication in the Official Reports. For good cause it now appears that the

opinion should be published in the Official Reports and it is so ordered.


_____

HUFFMAN, Acting P. J.

Copies to:  All parties