Filed 2/7/22  Cal. School Employees etc. v. Stockton Unified School District CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION & ITS STOCKTON CHAPTER NO. 318 et al., | C091067 |
| Plaintiffs and Appellants, | (Super. Ct. No. STK-CV-UMCP-2018-0006108) |
| v. | |
| STOCKTON UNIFIED SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |

Appellant California School Employees Association (CSEA) brought a petition for writ of mandate to stop the practice of respondent Stockton Unified School District of docking employees for salary advances when it was subsequently determined that an employee was absent and did not have available paid leave to cover the time not worked.[1]

---

[1]     CSEA is the exclusive employee representative of several bargaining units of classified school employees employed by the Stockton Unified School District. Appellants include CSEA, its Stockton Chapter No. 318, Delta Valley Chapter No. 821, Stockton Transportation Chapter No. 885, and Sylvia Deed.  We refer to appellants

1

The District issues a pay warrant around the twenty-first of the month based on the employee's salary for the month and pays the employee that amount at the end of the month. When the District determines that after the twenty-first an employee was not at work and did not have paid leave available to cover that time, the District docks the employee's pay accordingly. CSEA contends that these deductions are permissible only if the employee consents in writing or the District obtains a judicial order for wage garnishment.

The District's practice was the subject of another mandamus petition that CSEA filed in 2004 alleging that the District docked the pay of CSEA member Brenda Booker without her consent, contrary to California wage garnishment law, and in violation of her due process rights. The outcome of this action was a judgment granting the petition and ordering the District (1) to repay Booker the sum deducted plus interest, and (2) to "provide actual notice and a pre-deprivation hearing before deducting from an employee's paycheck overpayments the District believes have been paid to an employee." (*California School Employees Association v. Stockton Unified School District* (Super. Ct. San Joaquin County, 2006, No. CV 023175) (*Booker*).) The District contends it has complied with the court's order ever since, which is all that is required.

The trial court in the present case denied CSEA's petition, finding the District's practice to be "reasonable and lawful" and not in "violation of California rules governing wage attachments and wage garnishments." The court also concluded this action was barred by collateral estoppel and res judicata, finding "the issues herein are identical to those decided in *Booker* and that the parties herein are identical to or in privity with the parties in *Booker*."

We will affirm the judgment and order of the trial court.

---

collectively as "CSEA." The named respondents are the Stockton Unified School District, the Board of Trustees of Stockton Unified School District, and the superintendent. We refer to respondents collectively as "the District."

## FACTUAL AND PROCEDURAL BACKGROUND

### *The District's Recoupment Practice*

The District uses a computer system to issue payroll warrants that reflect each employee's monthly salary.[2] Pay warrants are processed on or around the twenty-first day of the month. Employees are paid the full amount of the warrant at the end of the month, regardless of whether they were absent from work after the warrant is issued.

The District subsequently adjusts for payments to employees who were absent without paid leave after the warrant issued. District employees bank the full amount of paid leave (e.g., for illness or personal necessity) at the start of the year. Paid leave used by an employee is deducted from the banked balance until exhausted. Information about paid leave used by employees is collected via paper forms and reports and compiled by the District's human resources department. Frequently, after the paycheck issues at the end of the month, the District determines that an employee does not have paid leave to cover a post-warrant absence. The District notifies the employee that the following month's pay warrant will be docked for the time taken off without paid leave. The notice also informs the employee of an informal pre-dock hearing at a specified date and time. Employees may request that the amount be docked in installments. If there is a dispute between the District and the employee regarding pay docks or the District's calculation, the District does not dock pay until the dispute is resolved.

### *Recoupment from Sylvia Deed*

In August 2017, Sylvia Deed received a pre-dock notice letter regarding payments for absences without paid leave for four days in April and May 2017. The letter stated she could attend an informal pre-dock hearing to discuss the basis for the salary

---

[2]     A warrant in this context is a written order for payment of school district funds, including to pay employee salaries. (Ed. Code, §§ 42631, 42650; 56 Cal.Jur.3d (2021) Schools § 118.)

3

deduction or calculation.  The letter advised Deed to bring any supporting documentation she might have and that she had a right to contact her union representative.  Deed attended a pre-dock hearing in the District's human resources office.  Deed spoke to a senior personnel technician who informed Deed that she could repay the money in one or two deductions from her paycheck.  Deed felt that the District had made mistakes in the entries in the letter and told the technician she disputed the payments and did not believe she owed any money to the District.  Deed did not authorize the District to deduct the payments.  The District deducted the amount of $531.53 divided into two monthly installments.

*The Booker Action*

On April 14, 2004, CSEA, its Stockton Chapter No. 821, and Brenda Booker filed an amended petition for writ of mandate in *Booker*.  The petitioners alleged that the District deducted amounts from Booker's January and March 2003 paychecks without her consent to recoup alleged overpayments.

The petitioners contended that "[t]he District's salary deductions violate the attachment and wage garnishment laws, including Code of Civil Procedure section 487.010 et seq. and Code of Civil Procedure section 706.010 et seq."[3]  The petition also alleged the District violated constitutional due process "in failing to provide Petitioner Booker with pre-deprivation notice and an opportunity to respond and a pre-deprivation hearing . . . ."

The petition alleged claims under section 1085, the United States Constitution, 42 United States Code section 1983, and the California Constitution.  The petitioners sought a declaration that the District's failure to provide a pre-deprivation notice, an opportunity to respond, and a hearing in compliance with California wage garnishment

---

[3]  All undesignated statutory references are to the Code of Civil Procedure.

4

law was unconstitutional, as well as an injunction against these alleged failures. The petitioners also sought damages for Booker.

On March 13, 2006, the trial court issued a tentative ruling finding that Booker never received a pre-dock notice letter from the District, never received actual notice of the deduction prior to receiving a pay warrant, and disputed and did not consent to the deductions. The court ruled that the District (1) "is required to make normal salary payments to its employees without deductions unless the employee is given notice and an opportunity to be heard," (2) "must provide actual notice and a pre-deprivation hearing before deducting from an employee's paycheck overpayments the District believes have been paid to an employee," (3) "is not required to cease and desist from making deductions from wages to recoup overpayments made by the District so long as the employee is given actual notice and the opportunity to object to the deduction at an informal or formal pre-deprivation hearing," and (4) "is not ordered to comply with wage garnishment laws in seeking recoupment of the overpayment so long as the employee is provided actual notice and informal pre-deprivation hearing regarding the overpayments."

The court's order and judgment were more summary, stating in substance, "[a] writ of mandamus shall issue under seal of this Court, compelling Respondents, and each of them, their agents, officers, and employees to: (1) pay Petitioner Booker the sum of $1,226.68, plus interest or that sum previously agreed by the parties to be due and owing; and (2) provide actual notice and a pre-deprivation hearing before deducting from an employee's paycheck overpayments the District believes have been paid to an employee."

*The Current Action*

On May 24, 2018, CSEA filed a petition for writ of mandate or prohibition alleging a single claim under section 1085 that "[b]y deducting alleged overpayments from its employees' paychecks without a valid judicial order, and/or express written

5

authorization from each employee, the District has violated, and continues to violate, Code of Civil Procedure sections 760.020 and 487.02(c)." CSEA sought a writ of mandate compelling the District "(a) to immediately cease and desist from making deductions from their employees' paychecks for alleged overpayments without obtaining a valid judicial order or the express written authorization of the employee, in compliance with Code of Civil Procedure sections 760.020 and 487.02(c), and (b) to make Sylvia Deed whole for the above-described deductions from her wages by the District or to pay such other sum as the Court finds just and proper."

On July 29, 2019, the trial court requested additional briefing "on the impact or effect of the court's ruling" in *Booker*.

On October 4, 2019, the trial court denied CSEA's petition. The court found the District's leave tracking and payroll docking system complied with the order in the *Booker* case to meet the due process rights and needs of CSEA members and that Deed was afforded each of the required pre-docking steps.[4] The court found "the [District's] system to be a reasonable and lawful method of payroll administration and reconciliation of unearned amounts paid when an employee mistakenly (or intentionally) is absent from work for a period of time in excess of authorized available leave." The court also stated that it "adopts the *Booker* analysis and finds no violation of California rules governing wage attachments and wage garnishments," citing *Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696 (*Steinhebel*).

---

[4] The trial court observed that Deed did not assert that the District "was incorrect in its calculations or that she was deprived of the established process." As described above, Deed informed the senior personnel technician who conducted the hearing that she disputed the District's calculations and did not believe that she owed any money. However, in her declaration submitted to the trial court, Deed did not explain in what manner the District's calculation was incorrect or provide documentation supporting her assertion that she did not owe the District anything.

6

The court further stated that the present action was barred by the doctrines of collateral estoppel and res judicata, finding that "the issues herein are identical to those decided in *Booker* and that the parties herein are identical to or are in privity with the parties in *Booker*."

Lastly, the trial court found that the petitioners "have not met the criteria for injunction relief set forth in Code of Civil Procedure 526(a)(1): that continuation of the docking procedures implemented over a decade ago with Petitioners' input would result in waste or in great or irreparable injury to Petitioner."[5]

## DISCUSSION

### *Standard of Review*

Mandamus under section 1085 is an appropriate procedure to resolve this dispute. (See *Cory v. Poway Unified School Dist.* (1983) 147 Cal.App.3d 1158, 1167; see also *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 343; *A.B.C. Federation of Teachers v. A.B.C. Unified Sch. Dist.* (1977) 75 Cal.App.3d 332, 340-342; *California State Employees' Assn. v. State of California* (1988) 198 Cal.App.3d 374, 375 (*California State Employees' Assn.*).) "In reviewing a trial court's judgment on a petition for writ of ordinary mandate, we apply the substantial evidence test to the trial court's factual findings. However, we exercise our independent judgment on legal issues, such as the interpretation of statutory retirement provisions." (*Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 53; *City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 226 (*City of Oakland*).)[6]

---

[5] The District does not dispute CSEA's contention on appeal that section 526 does not apply to a mandamus petition.

[6] On reply, CSEA presents a discussion of the underlying facts to "correct the District's misrepresentation of the facts" regarding overpayments. However, CSEA states in its opening brief that "the material facts are not disputed, and the issues presented are questions of law." To the extent the trial court made express or implicit

7

Regarding "the preclusive effect of a prior final judgment on the merits. [Citation.] The doctrine has two distinct aspects: claim preclusion and issue preclusion. [Citation.] Claim preclusion, often referred to as res judicata, provides that 'a valid, final judgment on the merits precludes parties or their privies from relitigating the same "cause of action" in a subsequent suit.' [Citation.] Issue preclusion, or collateral estoppel, ' "precludes relitigation of issues argued and decided in prior proceedings." ' [Citations.]" (*City of Oakland*, *supra*, 224 Cal.App.4th at p. 227.) Application of this doctrine " 'is intended to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation.' [Citation.] It 'rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.' [Citations.]" (*Id.* at p. 228.)

Whether res judicata or collateral estoppel applies in a particular case is a question of law reviewed de novo. (*City of Oakland, supra*, 224 Cal.App.4th at p. 228.)

*Wage Garnishment and Consent*

CSEA describes the "central issue" here as "whether [the District] has legal authority for deducting money from employees' paychecks without those employees' consent and without obtaining wage garnishment orders pursuant to Code of Civil Procedure section 706.010 et seq." We conclude that employee consent is not required, nor is a wage garnishment order.

Taking the wage garnishment issue first, we conclude that California attachment and wage garnishment law does not apply, because payments in excess of available leave that the District court docks are not wages. (*Steinhebel, supra*, 126 Cal.App.4th at pp. 704-705.) Rather, they are contingent advances pending the District's determination

findings of fact, we conclude they are supported by substantial evidence as set forth in the declaration of Joseph D. Fiori, human resources operations director for the District.

8

whether the employee worked or was absent from work with available leave after the warrant issued. (*Ibid.*)

In *California State Employees' Assn.*, the court addressed an audit of the California Medical Facility at Vacaville which determined that "salary deductions" for payments to employees variously described as "outstanding erroneous salary advances" or "overpayments" violated the attachment and wage garnishment laws. (*California State Employees' Assn., supra*, 198 Cal.App.3d at p. 375.) The state contended recoupment of the overpayment by means of salary reductions was authorized by Government Code 17051, which provided procedures when facts or circumstances affect the validity or amount of a warrant. (*California State Employees' Assn., supra*, at p. 376.) The court in *California State Employees' Assn.* held the specific provisions of attachment and wage garnishment law take precedence over the general provisions of the Government Code. (*Id*. at p. 378.)[7]

The court in *California State Employees' Assn.* quoted *Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, a case where the employer set off against an employee's final paycheck the amount of the debt the employee owed: " 'The policy underlying the state's wage exemption statutes is to insure that regardless of the debtor's improvidence, the debtor and his or her family will retain enough money to maintain a basic standard of living, so that the debtor may have a fair chance to remain a productive member of the community. [Citation.] Moreover, fundamental due process considerations underlie the prejudgment attachment exemption. Permitting appellant to

---

[7]     Section 487.020, subdivision (c), provides that " 'Earnings' as defined by Section 706.011 are exempt from attachment." Section 706.011, subdivision (b), defines earnings as "compensation payable by an employer to an employee for personal services performed by the employee, whether denominated as wages, salary, commission, bonus, or otherwise." Section 706.020 states in relevant part that "the earnings of an employee shall not be required to be withheld by the employer for payment of a debt by means of any judicial procedure other than" the wage garnishment law.

9

reach respondent's wages by setoff would let it accomplish what neither it nor any other creditor could do by attachment and would defeat the legislative policy underlying that exemption. We conclude that an employer is not entitled to a setoff of debts owing it by an employee against any wages due that employee.' " (*California State Employees' Assn., supra*, 198 Cal.App.3d at p. 377.)

In *Steinhebel*, employees selling subscriptions to the Los Angeles Times signed a contract agreeing that advances paid on commissions for sales to a customer were subject to charge-back from subsequent compensation if the customer canceled before a 28-day holding period. (*Steinhebel, supra*, 126 Cal.App.4th at pp. 701-702.) On appeal from summary judgment, the plaintiff employees contended the paper's charge-back violated Labor Code section 221 that " '[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee.' "[8] (*Steinhebel, supra*, 126 Cal.App.4th at p. 704.) Similar to the definition of "Earnings" in wage garnishment law (§ 706.011, subd. (b)), section 200 of the Labor Code defined " 'wages' to include 'all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, *commission basis*, or other method of calculation.' " (*Steinhebel, supra*, at p. 704.)

The court in *Steinhebel* determined that the advances to employees on sales that were not complete were not wages, therefore the charge-back conditions for a completed sale did not violate Labor Code section 221. "The essence of an advance is that at the time of payment the employer cannot determine whether the commission will eventually

---

[8] "The Legislature enacted [Labor Code] section 221 and its related provisions to proscribe secret deductions or 'kickbacks' that made it appear as if an employer was paying wages in accordance with an applicable contract or statute but in fact paying less. [Citations.]" (*Steinhebel, supra*, 126 Cal.App.4th at p. 707.)

10

be earned because a condition to the employee's right to the commission has yet to occur or its occurrence as yet is otherwise unascertainable. An *advance,* therefore, by definition is not a *wage* because all conditions for performance have not been satisfied." (*Steinhebel, supra*, 126 Cal.App.4th at p. 705.)

The court found that plaintiffs in *Steinhebel* "were aware that a sale did not qualify as a 'commissionable order' unless and until the customer kept the subscription for 28 days without a stop date. They also knew and agreed that they would receive advances before respondent could ascertain whether the sales would actually ripen into 'commissionable orders.' Advances on commissions under the Agreement therefore did not constitute payment of wages." (*Steinhebel, supra*, 126 Cal.App.4th at p. 706.)

Since the portion of the warrants and payments thereon subject to recoupment by the District are advances, not wages, the recoupment process need not comply with California wage garnishment law.

An employee's written consent is not required because the pre-docking notice and hearing procedure provides notice to the employee and protects the employee from incorrect and unjustified deductions to the same extent as contractual consent. We can think of no legal principle that permits an employee to obtain a windfall merely by refusing to consent to a valid deduction based on an accurate calculation that the employee was advanced a sum for a time that the employee was absent from work without paid leave.

On reply, CSEA cites a 2008 letter from the Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE), responding to a request for an opinion regarding the payroll practice of an employer whose employees submitted timesheets after being paid the full amount for two weeks of work hours. (Dept. Industrial Relations, DLSE Opn. Letter No. 2008.11.25-1 (Nov. 25, 2008).) If the timesheet indicated that the employee was paid for unpaid time off, the overpayment was deducted in the next payroll period.

11

DLSE concluded that pertinent Labor Code provisions did not prohibit this practice.  Turning to case law including *Barnhill* and *California State Employees' Assn.*, DLSE said "[w]e take the view that periodic deductions from wages authorized in writing by an employee to recoup predictable, expected overpayments that occur as a consequence of the payroll practice do not run counter to" those cases, "which clearly prohibit involuntary deductions used to set off for a debt owed to the employer by an employee."  (Dept. of Industrial Relations, DLSE Opn. Letter No. 2008.11.25-1, *supra*, p. 3.)  Noting that the employer's practice was "*mechanically* similar" to *Steinhebel*, DLSE said that case addressed "advances of commissions" but "the same reasoning would apply to subsequent recovery of 'advances' for hours not worked which result in overpayments that occur as a consequence of an employer's payroll system."  (*Id.* at pp. 3-4.)  DLSE acknowledged the "periodic deductions for overpayments that occur due to the consequences of an employer's payroll system are not an uncommon practice, and we found no case law or Labor Code provisions that expressly bar the practice."  (*Id.* at p. 4.)  However, citing Labor Code section 224 that a deduction authorized in writing does not violate Labor Code section 221, as well as a previous DLSE opinion "that a deduction for previous overpayment of wages is not unlawful if there is a previous written agreement based upon voluntary consent of employee" (Dept. of Industrial Relations, DSLE Opn. Letter No. 2008.11.25-1, *supra*, p. 3), DLSE concluded that "[e]mployee authorization is critical to permitting such deductions," (*ibid.*) and a timesheet "does not constitute the required written authorization if it does not expressly and voluntarily authorize a specific prospective deduction."  (*Id.* at p. 4.)

" ' "The DLSE's opinion letters, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." ' [Citations.]" (*Townley v. BJ's Restaurants, Inc.* (2019) 37 Cal.App.5th 179, 185, fn. 8.)

As DLSE concedes, the Labor Code and case law do not bar the common practice of advance payments to employees that are subject to deductions for unpaid time off in the next payment cycle. The court in *Steinhebel* concluded that advance payments are not wages subject to attachment and wage garnishment law, both of which define "[e]arnings" and "wages," as payment for labor "performed" by an employee. (§§ 487.02, subd. (c), 706.011, subd. (c); Lab. Code, § 200; Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2020) ¶ 11:545.5 ["Wages are defined broadly to include 'all amounts *for labor performed . . .*' This definition makes it clear that the statute prevents an employer from taking back wages earned and paid (as opposed to overpayments of wages not earned)"].) While DLSE and *Steinhebel* emphasize the significance of written authorization or agreement for the deduction practice, given that advances are not payment for work "performed" by an employee, it does not follow that recoupment of advances as opposed to wages necessarily requires written consent and is unlawful without it.

However, the consent requirement addresses the legitimate concern that an employee may receive a reduced pay check without prior notice or an opportunity to contest the deduction. A written agreement, as in *Steinhebel*, by its terms notifies an employee of the circumstances under which an advance will be recouped and is especially appropriate when *all* such commissions are paid in advance. (See *Steinhebel, supra*, 126 Cal.App.4th at p. 708 ["Appellants were on notice and agreed that their future commission advances were subject to charge-back for past advances that failed to qualify as an earned commission"].) Where an individual employee in a particular payment cycle is subject to docking for an absence without paid leave, the pre-docking notice and hearing procedure that CSEA sought and obtained in the *Booker* case serves an equivalent function. As Deed was in this case, an employee is notified by letter of the specific advances that will be docked, the reason for docking (e.g., Deed's personal and sick leave time had been exhausted), and afforded an opportunity to dispute the

13

deduction, i.e., to refuse to consent to a deduction and make the case that it was inaccurate or improper. But a requirement of consent cannot be pushed so far as to nullify the fact that an employee was absent from work without paid leave. An employee should not be able to simply refuse to sign a written consent and obtain a windfall, regardless of the validity of the deduction. Nor do we conclude that every employer with a practice that involves advance payment and recoupment based on subsequent events must require that each employee who wishes to work for that employer sign a pre-employment written agreement consenting to the process. It is sufficient that the employee be afforded due process with respect to a deduction of an advance that was not earned or covered by paid leave.

We conclude the trial court correctly ruled that the District's docking procedure was "reasonable and lawful" and did not violate California attachment and wage garnishment law.

### Res Judicata

"Res judicata encompasses ' "matters which were raised or could have been raised, on matters litigated or litigatable" ' in the prior action. [Citation.] ' " 'The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.' " ' [Citation.] ' " 'If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.' " ' [Citation.]" (*Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 844.)

"With respect to claim preclusion (res judicata), three requirements must be met. First, the second lawsuit must involve the same ' "cause of action" ' as the first lawsuit. [Citation.] Second, there must have been a final judgment on the merits in the prior

14

litigation. Third, the parties in the second lawsuit must be the same (or in privity with) the parties to the first lawsuit. [Citation.]" (*City of Oakland, supra*, 224 Cal.App.4th at p. 228.) However, the "[r]ule of res judicata should not be defeated by ' "minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose—a second trial on the same cause between the same parties. . . ." [Citations.]' " (*Id.* at pp. 229-230, quoting *Rynsburger v. Dairymen's Fertilizer Cooperative, Inc.* (1968) 266 Cal.App.2d 269, 278.)

CSEA argues that the current claim is not the same claim that it brought in *Booker*, because that case "challenged a different practice by the District," which the District has changed since then.

"Whether two lawsuits are based on the same cause of action is determined in California by reference to the primary right theory. [Citation.] Under this theory, a 'cause of action' is comprised of a primary right possessed by the plaintiff, a corresponding duty imposed upon the defendant, and a wrong done by the defendant which is a breach of such primary right and duty. [Citation.] The primary right is the plaintiff's right to be free of the particular injury, regardless of the legal theory on which liability is premised or the remedy which is sought. [Citations.] Thus, it is the *harm suffered* that is the significant factor in defining the primary right at issue. [Citations.]" (*City of Oakland, supra*, 224 Cal.App.4th at pp. 228-229.)

Applying these principles, we conclude that the harm that lead to the trial court's order and judgment in *Booker* is the same harm that prompted the present petition for writ of mandate. Distilled to its essence, the harm in both *Booker* and the present case is unlawful docking of advances. In *Booker*, the petitioners claimed that employees like Booker were docked in violation of California attachment and wage garnishment law and accordingly without due process. The petitioners expressly linked their due process claim in *Booker* to the District's alleged failure to comply with California attachment and wage garnishment law. The petitioners sought a peremptory writ "declaring the District

15

violated attachment law, Code of Civil Procedure section 487.010 et seq, and wage garnishment law, Code of Civil Procedure section 706.010 et seq." In the petitioners' claims under the United States and California Constitutions and 42 United States Code section 1983, the petitioners sought a declaration that the District violated due process by failing to provide a "pre-deprivation" notice and a hearing "in compliance with California wage garnishment law . . . ."

Ultimately, the trial court in *Booker* did not link notice and a pre-deprivation hearing to compliance with wage garnishment law. The court simply ordered the District to "provide actual notice and pre-deprivation hearing before deducting from an employee's paycheck overpayments the District believes have paid to an employee."[9] Ten years later, CSEA sought in this case a writ compelling the District before docking to obtain "a valid judicial order or the express written authorization of the employee, in compliance with Code of Civil Procedure sections 706.020 and 487.02(c)." This is the outcome CSEA was not able to achieve in *Booker*. Having had a chance to litigate this issue once in the superior court, CSEA "is not now entitled to take another bite at the same apple." (*City of Oakland, supra*, 224 Cal.App.4th at p. 229.)

CSEA cites *American Broadcasting Cos. v. Walter Reade-Sterling, Inc.* (1974) 43 Cal.App.3d 401, a case involving the preclusive effect of a nonsuit judgment, that res judicata "does not prevent a reexamination of the same questions between the same parties where in the interim the facts have changed or new facts have occurred which may alter the legal rights of the parties." (*Id*. at p. 408.) CSEA argues that the factual

---

[9]     In the tentative, the trial court in *Booker* ruled "[t]he District is not ordered to comply with wage garnishment laws in seeking recoupment of the overpayment so long as the employee is provided actual notice and an informal pre-deprivation hearing regarding the overpayments." While the tentative is not a judgment with preclusive effect, it explains why the court omitted a requirement of compliance with wage garnishment law in the judgment.

circumstances here give rise to a new claim because sending pre-docking notices "is a significant change from the practice that was challenged in *Booker*, since at least on the surface it appears to mitigate the constitutional due-process concerns that were the basis of the *Booker* judgment." However, the petitioners based their due process claim in *Booker* on the District's failure to comply with California wage garnishment law. From that case to this one, the District has declined to comply with wage garnishment law in its recoupment practice, including statutory limitations on the amount of earnings withheld (§§ 706.050-706.052). Thus, the interim facts have not changed nor have new facts altered the rights of the parties. (See *City of Oakland, supra*, 224 Cal.App.4th at p. 231 [rejecting claim of material change under *American Broadcasting* where intervening documentation of holiday pay benefit did not change how union members were compensated for holiday work].)[10]

CSEA also argues that the parties are not "sufficiently the same or in privity," because Deed and CSEA Chapter Nos. 318 and 885, and employees in those chapters, were not parties to *Booker*, and CSEA Chapter No. 821, "which was a party to *Booker*, is a party to the present lawsuit as representative of numerous District employees who were not employed by the District during the *Booker* case and who therefore are not in privity with those petitioners."

---

[10] Moreover, in *Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, the court rejected the suggestion in *Nakash v. Superior Court* (1987) 196 Cal.App.3d 59, 68, "that in determining what constitutes the ' "same controversy" ' for purposes of res judicata, '[a]nalysis has shifted from identification of a primary right upon which only one claim is allowed to determination of the existence of a transaction involving a nucleus of facts upon which only one claim is allowed.' " (*Branson, supra*, at p. 340, fn. 6.) The *Branson* court said, "[w]herever this perceived shift may have occurred, it is inconsistent with the controlling authority of the California Supreme Court and we therefore decline to apply a 'nucleus of facts' test." (*Ibid.*; see *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795.)

"Privity requires an identity of interests, or a relationship which is sufficiently close to justify application of the doctrine.  [Citation.]  A person who is in privity with a party to a former proceeding is bound by that proceeding only when his or her interests were adequately represented.  [Citation.]" (*Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1338.)  When an employee does not participate in a prior proceeding where the union's position was contrary to his or her interests, that employee can successfully assert lack of privity.  (*Ibid.*)  Conversely, " 'when a party acts in a representative capacity, and as such is lawfully authorized to litigate the questions at issue for those whom he represents, they as well as he are bound by the judgment.' " (*King v. International Union of Operating Engineers* (1952) 114 Cal.App.2d 159, 164 (*King*).)

CSEA does not contend that its position in *Booker* was contrary to the interests of any of the petitioners in this case.  As in *King*, we reject CSEA's contention that privity is lacking because some of the plaintiffs are not the same as in the *Booker* action.  (*King, supra*, 114 Cal.App.2d at p. 164 [rejecting argument the prior judgment was not conclusive because " 'none of the plaintiffs in *this* action was a plaintiff' " in the prior action].)  The court in *King* observed that such a contention "would, if here sanctioned, all but do away with the doctrine of res judicata itself." (*Id.* at p. 165.)  The court agreed with the respondents that " '[t]he most vexatious results would attend any rule which permitted members of an organization to bring successive suits, purportedly on behalf of all members, with none being bound by the results except those named.' " (*Ibid.*)

Finally, CSEA argues that the District "waived its defense of claim preclusion by not raising it in its answer to the petition for writ of mandamus."

Res judicata is an affirmative defense that is waived if not pled.  (*City of Oakland, supra*, 224 Cal.App.4th at p. 230, fn. 10; *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765, 772, fn. 6.)  However, in this instance the trial court sua sponte raised the preclusion issue by requesting the parties to

18

brief the impact of *Booker* on the present case.  A trial court has inherent power to control litigation and achieve justice.  (*Venice Canals Resident Home Owners Assn. v. Superior Court* (1977) 72 Cal.App.3d 675, 679; see also § 128, subd. (a)(8).)  The court's inherent power includes the power to dismiss a case where no valid cause of action is stated.  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021) ¶ 7:370.)

Moreover, the District argued in its initial opposition that CSEA's petition should be "estopped" by the District's compliance with the judgment in the *Booker* case.  CSEA responded with a declaration attaching documents related to *Booker* pulled from CSEA's archives and incorporated in the record on appeal.  CSEA and the District submitted briefs as requested by the court arguing the preclusive effect of the *Booker* case.  And the trial court ruled on the issue.  Under these circumstances, there was no waiver.  (*City of Oakland, supra*, 224 Cal.App.4th at p. 230, fn. 10.)

We conclude the trial court correctly ruled that CSEA's section 1085 claim is barred by *Booker* under principles of res judicata.

*Collateral Estoppel*

"Whereas res judicata bars claims that *could have been* raised in the first proceeding regardless of whether or not they were raised [citation], collateral estoppel bars only issues that were actually and necessarily decided in the earlier litigation. [Citation.]"  (*Noble v. Draper* (2008) 160 Cal.App.4th 1, 11, fn. omitted (*Noble*).)  Collateral estoppel need not be pleaded.  (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 89.)

"The five threshold requirements of collateral estoppel are:  (1) the issue to be precluded must be identical to that decided in the prior proceeding; (2) the issue must have been actually litigated at that time; (3) the issue must have been necessarily decided; (4) the decision in the prior proceeding must be final and on the merits; and (5) the party

19

against whom preclusion is sought must be in privity with the party to the former proceeding." (*Noble, supra*, 160 Cal.App.4th at p. 11, fn. 5.)

CSEA contends that collateral estoppel (issue preclusion) does not apply because: (1) *Booker* did not involve an identical issue; (2) CSEA could not have appealed the *Booker* judgment; (3) there was insufficient privity with *Booker* petitioners; and (4) public policy does not support issue preclusion.

We have addressed the privity requirement and to a large extent the identical issue requirement. As to the latter requirement, CSEA contends that "[t]he judgment in *Booker* addresses only the due process concerns that the *Booker* plaintiffs raised in their causes of action under the United States and state constitutions. It does not even mention the statutory argument based on the wage garnishment and attachment statutes." However, "[t]he 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342; *Basurto v. Imperial Irrigation Dist.* (2012) 211 Cal.App.4th 866, 887.) In *Booker,* as here, CSEA alleged that the District's docking practice violated California attachment and wage garnishment law. The trial court in *Booker* expressly found in its tentative ruling that the District need not comply with wage garnishment laws so long as an employee is provided actual notice and a pre-docking hearing, indicating that this issue was actually litigated. Consistent with the tentative, the *Booker* court did not include a requirement that the District comply with garnishment law in the judgment. Thus, CSEA raised the same issue in *Booker* raised here—compliance with wage garnishment law—and that issue was actually litigated.

CSEA next contends that issue preclusion does not apply because as the party prevailing in the *Booker* judgment, it could not appeal the judgment. CSEA relies on cases "when a trial court ruling is based on multiple grounds, 'a ground reached by the trial court *and properly challenged on appeal*, but not embraced by the appellate court's decision, should not affect the judgment's preclusive effect.' [Citation.] Instead, the

20

preclusive effect of the judgment should be evaluated as though the trial court had not reached the issue that the appellate court did not reach." (*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2019) 43 Cal.App.5th 988, 1004, citing *Samara v. Matar* (2018) 5 Cal.5th 322, 326; see also *Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 85.) "The Supreme Court [in *Samara*] noted a limitation on its ruling: 'We caution, however, that we take no position on the significance of an independently sufficient alternative ground reached by the trial court and *not* challenged on appeal.' " (*Rincon, supra*, at p. 1004, quoting *Samara, supra*, at p. 337.) These cases are inapposite outside of their specific context where, unlike this case, a party appealed a trial court judgment based on multiple grounds.

Moreover, for purposes of standing to appeal, the California Supreme Court held that " ' "any party aggrieved by an appealable order has a right to appeal therefrom, even though the order is in form apparently favorable to him." ' [Citation.] 'One is considered "aggrieved" whose rights or interests are injuriously affected by the judgment. [Citations.]' [Citation.] We liberally construe the issue of standing and resolve doubts in favor of the right to appeal. [Citation.]" (*Apple, Inc. v. Franchise Tax Bd.* (2011) 199 Cal.App.4th 1, 13.)

CSEA sought a peremptory writ in *Booker* on the ground that the District violated due process by failing to comply with California attachment and wage garnishment law. The judgment rendered did not require the District's compliance with wage garnishment law, which would have afforded employees represented by CSEA significant rights over and above the judgment's general commandment to the District to provide "actual notice and a pre-deprivation hearing," not the least being the statutory limitation on the amount that can be deducted (§§ 706.050-706.052). Thus, CSEA had standing to appeal in *Booker* but did not. *Samara* and *Zevnik* do not aid CSEA's argument that issue preclusion does not apply.

21

Lastly, CSEA maintains that public interest militates against issue preclusion, because "the *Booker* decision would immunize the District in perpetuity from any lawsuit challenging its nonconsensual wage recoupment practices—thus binding not just the parties in *Booker* but all future District employees." "However, '[t]he public interest exception [to collateral estoppel] is an extremely narrow one; we emphasize that it is the exception, not the rule, and is only to be applied in exceptional circumstances.' " (*Dailey v. City of San Diego* (2013) 223 Cal.App.4th 237, 258 (*Dailey*), quoting *Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 259.) "For example, in *Arcadia*, the California Supreme Court only approved application of the exception because if the action were barred, 'the state of the law on a matter of statewide importance would remain permanently unclear and unsettled.' " (*Dailey, supra*, at p. 258, quoting *Arcadia, supra*, at p. 259.) The issue here is not of statewide importance. Rather, it only affects a small portion of the compensation of certain employees represented by CSEA. (*Dailey, supra*, at p. 258.)

By contrast, " '[t]he public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy' [citation] all support the trial court's decision to afford the prior litigation collateral estoppel" in this case. (*Dailey, supra*, 223 Cal.App.4th at pp. 258-259.) In *Booker*, CSEA obtained a writ requiring the District to give CSEA's employees pre-docking notice and a hearing, but not a declaration that the District violated and must comply with wage garnishment law in its docking practice. CSEA did not appeal and the District complied with the *Booker* court's judgment for 10 years. The trial court's determination that collateral estoppel applied promoted its purpose to protect the District from vexatious litigation. (*Id.* at p. 260.) Making the District "expend time, energy, money and resources to defend the exact same case in this action is an example of

22

precisely the type of vexatious litigation the doctrine of collateral estoppel was designed to prevent." (*Ibid.*)

We conclude the trial court properly determined that CSEA's petition for writ of mandate was barred by collateral estoppel.

## DISPOSITION

The judgment is affirmed. The District shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


<u>            /s/            </u>
RAYE, P. J.


We concur:


<u>      /s/            </u>
HULL, J.


<u>      /s/            </u>
MAURO, J.