Filed 4/27/22  Ghadimi v. Munoz CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KAMRAN GHADIMI et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>RUBEN MUNOZ et al.,<br><br>Defendants and Appellants. | B301053 consolidated with B301878, B301879, B301881, B301882, B301883, B301884 and B301893<br><br>(Los Angeles County<br> Super. Ct. Nos. NC061443, NC061441, NC061501, NC061503,  NC061504, NC061749, NC061753, NC061754) |

APPEAL from judgments of the Superior Court of Los Angeles County, Michael P. Vicencia , Judge.  Reversed.

Hinshaw & Culbertson, Eugene Brown, Jr., Amee A. Mikacich, for Defendants and Appellants.

John L. Dodd & Associates and John L. Dodd, for Plaintiffs and Respondents.

**INTRODUCTION**

Plaintiffs Kamran Ghadimi, M.D., and Advanced Pain Treatment Medical Center sued ten individual defendants in nine separate cases, alleging that after defendants' insurance failed to pay for medical treatments defendants received, defendants themselves owed the outstanding fees. The cases were deemed related, and one case was tried separately . The remaining eight cases are at issue in this appeal.[1]

Plaintiffs alleged defendants owed fees for treatments performed between 2010 and 2016. Proceeding to trial solely on plaintiffs' quantum meruit theory, the parties stipulated to have a jury determine the reasonable value for each of the medical procedures plaintiffs performed. The court and parties were then to use those values to calculate what each defendant owed the plaintiffs based on the treatments each defendant received.

During trial, defendants asserted orally and in written motions that some of plaintiffs' claims were time-barred under

---

[1] The defendants/appellants in this case are Raegan Garcia and Gregory Garcia (Super. Ct. L,A. County, 2017, No. NC061441; Ct. App. No. B301879); Sean Monge (Super. Ct. L.A. County, 2017, No. NC061501; Ct. App. No. B301883); Maria Orbillo (Super. Ct. L.A. County, 2017, No. NC061504; Ct. App. No. B301884); Ryan Gonzalez (Super. Ct. L.A. County, 2018, No. NC061749; Ct. App. No. B301893); Maria Sampiero (Super. Ct. L.A. County, 2018, No. NC061754; Ct. App. No. B301878); Ruben Munoz (Super. Ct. L.A. County, 2017, No. C061443; Ct. App. No. B301053); Dennis Casey (Super. Ct. L.A. County, 2018, No. NC061753; Ct. App. No. B301881); and Georgina Eddy (Super. Ct. L.A. County, 2017, No. NC061503; Ct. App. No. B301882). We granted defendants' motion to consolidate the cases for purposes of the appeal.

the two-year statute of limitations for quantum meruit. The court told defense counsel that the statute of limitations was not relevant to the limited scope of the jury trial, so the court would address it later. After trial, the court set a briefing schedule and a hearing to address the statute of limitations and determine the amount of each judgment. Before the briefing was due, however, the court entered judgments without addressing defendants' statute of limitations defense. When defendants objected after the judgments had been entered, the court said the motions had been denied.

On appeal, defendants contend the trial court erred by denying their motions regarding the statute of limitations. Plaintiffs assert that defendants waived any such defense through the pretrial stipulations. We find the trial court erred by entering judgment before the statute of limitations issue was fully litigated and decided. We therefore reverse the judgments and remand the case for the trial court to address the statute of limitations issue.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Complaints

Plaintiffs alleged in their complaints that Ghadimi is a board-certified anesthesiologist with a subspecialty in pain management; Advanced Pain is his sole proprietorship medical facility. Plaintiffs alleged each defendant received medical services from Ghadimi at Advanced Pain and agreed to be financially responsible for those services. Although defendants relied on health insurance for payment, "despite numerous attempts by the Plaintiffs to obtain payment for the Services," certain amounts remained outstanding and due to plaintiffs. Plaintiffs alleged causes of action for breach of contract, open

3

book account, and quantum meruit, alleging that separate balances were owed to Ghadimi and Advanced Pain. The relevant dates of treatment and combined outstanding balances were alleged as follows:

| Defendant | Dates of treatment | Balance |
|---|---|---|
| R. Garcia | Feb. 4, 2011 to Mar. 3, 2016 | $246,125.95 |
| G. Garcia | Mar. 7, 2013 to Nov. 18, 2015 | $29,028.61 |
| Munoz | Aug. 28, 2014 to Sept. 29, 2015 | $126,960.00 |
| Monge | Feb. 5, 2010 to July 8, 2014 | $314,429.52 |
| Eddy | Jan. 28, 2010 to Oct. 9, 2014 | $104,650.00 |
| Orbillo | June 23, 2013 to Oct. 9, 2014 | $31,214.00 |
| Sampiero | Aug. 14, 2014 to Aug. 27, 2015 | $130,268.00 |
| Casey | Feb. 18, 2014 to Nov. 17, 2015 | $144,845.66 |
| Gonzalez | Nov. 23, 2012 to Jan. 16, 2014 | $79,792.62 |

The complaints were filed on the following dates:

October 23, 2017: Garcias, Munoz

October 29, 2017: Mitre[2]

November 17, 2017: Monge, Eddy, Orbillo

April 24, 2018: Sampiero, Casey, Gonzalez

None of the complaints included allegations regarding delayed discovery, tolling, or any other issue addressing the statute of limitations. Defendants' answers included the statute of limitations as an affirmative defense.

## B.   Motions for summary adjudication

In November 2018, several defendants filed and/or joined motions for summary adjudication. The motions sought summary adjudication of the causes of action for breach of

---

[2] The case against Mitre was tried separately and is not at issue in this appeal, but it was related to the other cases below.

contract and open book account; they did not challenge the quantum meruit causes of action. However, the notices of motion also stated, "The Court is further requested to determine that the statute of limitations governing the purported, written and oral contracts bar[s] this action at law, through the application of C.C.P. §337, and §339 respectively, including the third cause of action for quantum meruit."

The memoranda in support of the motions argued that defendants were entitled to summary adjudication as to the breach of contract and open book account causes of action. Some defendants argued in part that the breach of contract claims were time-barred, either under the four-year statute of limitations for written contracts (Code Civ. Proc., § 337) or the two-year cause of action for oral contracts (*id*., § 339). Defendants' separate statements asserted two issues: (1) no contract was formed between plaintiffs and defendants, and (2) plaintiffs' billing records did not satisfy the requirements for open book accounts. Neither the memoranda of points and authorities nor the separate statements asserted that the quantum meruit cause of action was time-barred.

In their oppositions, plaintiffs asserted there were triable issues of material fact on "all three grounds asserted in Defendants' moving papers," including "triable issues of material fact . . . regarding the dates the causes of action accrued and the timeliness of [plaintiffs'] claims." Plaintiffs argued that defendants received treatment for months or years, and at some point insurance stopped paying for the treatment. Plaintiffs said that after they exhausted their efforts to obtain payment from defendants' insurance, they sent the defendants demand letters. For example, plaintiffs sent demand letters to the Garcias in

5

September 2014 and July 2017, and sent Orbillo demand letters in September 2014 and July 2017.  Plaintiffs asserted that defendants had not "unequivocally refused to pay for the services rendered" until after the July 2017 demand letters, so "the causes of action asserted by Plaintiffs did not begin to accrue" until that date.

In some of their opposing separate statements, plaintiffs included a fact regarding the statute of limitations, stating, "The statute of limitations did not begin to run until [defendants] unequivocally refused to pay [the] balance due after July 10, 2017."  Plaintiffs asserted that the complaints, filed in 2017 and 2018, were "served well within the statute of limitations for . . . a quantum meruit claim (2 years)."

The court denied the motions for summary adjudication without explanation.  No court reporter was present at the hearing.

## C.    Mitre trial

The trial in the Mitre case commenced in March 2019, as discussed in *Advanced Pain Treatment Medical Center v. Mitre* (Nov. 20, 2020, No. B298595) [nonpub. opn.] (*Mitre*).  In a special verdict, the jury found that Advanced Pain and Mitre entered into a contract, which Mitre breached.  The jury found that Advanced Pain was not harmed by Mitre's breach, however, and awarded no contract damages.  However, the jury awarded Advanced Pain $15,000 under a quantum meruit theory as the reasonable value of the services it provided.  We reversed the judgment because "[a]s a matter of law, a plaintiff may not recover on a quantum meruit claim if the parties have an enforceable agreement regarding the same subject matter.  The jury's special verdict findings accordingly were inconsistent."

6

(*Ibid*.)  We did not reach the merits of Mitre's statute of limitations defense.  (*Ibid*.)

## D.    Trial in the remaining cases

While the Mitre jury was deliberating, the court and counsel discussed trial of the next set of cases.  The court asked counsel whether they had discussed "the possibility of just having jurors decide what the reasonable value of the services were." After a recess, the court asked again, "What if plaintiff gave up the breach of contract claim," since both sides stipulated that the services had been provided.  The court then said, "And the only question is what is the reasonable value of the services. . . . If the plaintiff were willing to do that, what would be left on the quantum meruit claim, other than the reasonable value of the services?"  Defense counsel responded, "That's all."  Counsel for both sides said they would discuss the issue.  That afternoon, after the Mitre jury  rendered its verdict, counsel for both sides said they had discussed the issue and "come up with the basic terms" of a joint stipulation for the trial that they would file before trial.

On April 5, 2019, the parties filed a joint stipulation stating, "Plaintiffs shall dismiss the breach of contract[ ] and open book causes of action . . . .  The Parties stipulate that the sole remaining cause of action in all cases is for quantum meruit . . . . The Parties further stipulate that the issues remaining for trial shall be the reasonable value of the professional services performed" by Ghadimi "and of the facility fees" associated with

7

those services.[3]  The stipulation further stated that the jury would receive "fact-based evidence about what the procedures entail[ed]" and the reasonable value of those services, and evidence "not relevant to the reasonable value of the professional services and procedures" would be excluded.

On April 15, the parties filed a "joint stipulation pursuant to final status conference."  The stipulation stated that the jury would decide the reasonable value of 14 items: the physician fee and facility fee for six different procedures (a total of 12 values), the fee for conscious sedation (which was sometimes performed with the other procedures), and the physician fee for an office visit.  The parties further stipulated that a certain "number of procedures and professional services were performed for each defendant and are in dispute as unpaid."  For example, Monge had 24 facility fee procedures, 11 epidural procedures, 43 facet procedures, 20 radiofrequency procedures, 12 physician services for conscious sedation, and two office visits.  The parties also stipulated that "the aforesaid services were rendered at [Advanced Pain] and that defendants all tolerated the procedures well."  The stipulation also said, "The Parties further stipulate that if the jury determines the reasonable value to be greater than zero for any of the above services or fees, the value for each service or fee as determined by the jury shall be calculated by the Court based upon the herein stipulated number of the services and/or fees in dispute for each defendant and will be Plaintiffs' damages and the judgment entered by the Court."

---

[3] Facility fees address non-physician costs associated with a procedure, such as the operating room, recovery room, medication, lab tests, and radiology.

In a pretrial conference on May 20, the court noted that for purposes of the jury trial, "[W]e're not talking about specific treatments for these specific folks. We're asking the jury to give the reasonable values of specific types of treatment, not the specific treatment given to these defendants, these patients." Thus, the jury would not consider a defendant's "treatment and say, that treatment that she got on that day is worth X amount of dollars." Instead, the jury would determine the reasonable value of a facet block, for example, given by a doctor such as Ghadimi in the relevant geographic area, and that amount "would be applied to all of the facet blocks that are at issue in these cases." Counsel for both parties agreed the court's statement was accurate.

In the three-day trial, Ghadimi testified about his practice and the various procedures at issue. On cross-examination, defendants' counsel asked, "[W]e're here to try to figure out what the reasonable value of [your] services are for the last two years, correct?" Ghadimi responded, "The services was [*sic*] done between 2010 and 2016." Plaintiffs' expert Paul Adams and defendants' expert Michael Arrigo testified about the reasonable rates for the various services.

On the second day of trial, a juror wrote a question to the court: "[W]hat is the time period in which services were rendered by Dr. Ghadimi to the defendants?" Speaking to counsel outside the jury's presence, court read the question to counsel and said, "I don't think that's relevant." Defense counsel noted that Ghadimi testified that the services were provided from 2010 to 2016, and the court said, "Right. I don't know what difference it would make."

Also on the second day of trial, defense counsel stated, "I did have a motion on nonsuit based on the statute of limitations."

9

Defense counsel noted that Ghadimi "testified that he was trying to recover based upon services that were rendered in 2010 through 2014 [*sic*]. And the quantum meruit statute of limitations is two years. [¶] The first complaints were filed . . . in 2017, and three complaints were filed in 2018." The court asked whether the statute of limitations issue could be deferred, stating that the issues being presented to the jury were only the reasonable amounts for the services rendered, and "clearly there are some things that are within the statute that this jury has to come up with numbers for. [¶] So there's really no reason to do it now, and if you all agree, I'll simply defer the issue of statute of limitations until after the trial." Defense counsel stated, "That's fine." The court asked plaintiffs' counsel, "That all right with you, Mr. Amador?" Plaintiffs' counsel responded, "Yeah." After some additional testimony, the defense rested "subject to our motion that we've discussed previously."

The same day, defendants filed a motion for judgment of nonsuit and a motion for directed verdict. They argued that plaintiffs "claim that they provided certain pain management services . . . on dates of service that go back as far as January 2010. However, the earliest complaint at issue in this action was filed in October of 2017 . . . ." Defendants asserted that the statute of limitations for quantum meruit is two years, and "Plaintiffs' claims accrued as of the date of service for each claim," so portions of plaintiffs' claims were time-barred. In the alternative, defendants asserted that even if plaintiffs' claims did not accrue until after defendants' insurance refused to pay for the services, significant portions of plaintiffs' claims were still time-barred.

10

The following day, the jurors returned the verdict of values for various procedures. For example, the jurors found that for an epidural steroid injection under fluoroscopy, a reasonable facility fee was $9,000 and a reasonable physician fee was $1,000; for refilling and reprogramming an implantable pump, a reasonable facility fee was $4,000 and a reasonable physician fee was $400.

After the jurors were dismissed, the court stated, "Okay. So we still have to have a hearing to apply these numbers to the agreed upon services, the services that have been rendered and deal with counsel['s] statute of limitations issue." The court asked, "So does anyone think they're going to have post-trial motions?" Defense counsel stated, "The one we're talking about, yes, your honor." Plaintiffs' counsel stated, "[O]n the statute of limitations, just for the record, we're going to oppose that and object to it because of the stipulation. They stipulated to the number of procedures." The court responded, "Sir, I'm not going to rule on it now. So I will have you provide briefs, and that will be [on] the statute of limitations issue." The court set a hearing date for July 24, and ordered the parties to each file their briefs July 16 and replies on July 22.

On June 13, 2019, plaintiffs' counsel filed an unopposed ex parte request to continue the July 24 hearing date due to a family vacation. At the hearing on the ex parte on June 19, the court noted there was a "hearing on July 24th regarding completing the judgments and doing the calculations," which plaintiffs' counsel wanted to continue. Defense counsel stated, "I just wanted to remind the court that . . . we had a pending 581(c) motion for nonsuit which was going to be heard on the 24th. And I'm just asking . . . to remind the court that that is going to be on the 24th as well." Plaintiffs' counsel said, "That's the first time I've heard

11

of that, your honor," and went on to explain that the new proposed hearing date, August 20, coincided with a date in the Mitre case. The court granted the ex parte request, and ordered the parties to file their motions by August 9, oppositions by August 15, and set the hearing for August 20, 2019.

However, on July 24 the court entered judgments in favor of plaintiffs. The court apparently used a proposed judgment submitted by plaintiffs' counsel, which stated that the "Joint Stipulation provides for the Court to calculate the Judgment for each defendant," and that the parties "stipulated in the Joint Stipulation [to] the following number of facility fee procedures, physician services procedures, conscious sedation services and office visits." Reflecting the joint stipulation, the court found that Monge, for example, received 24 facility fee procedures, 11 epidural procedures, 43 facet procedures, 20 radiofrequency procedures, 12 physician services for conscious sedation, and two office visits. Multiplying these numbers by the jury's findings of reasonable values for each service, the court entered judgment against Monge for a total of $324,669.00. The court entered judgments against the other defendants as follows. Raegan Garcia: $212,576.00[4]; Eddy: $170,051.00; Casey: $110,607.00; Sampiero: $108,375.00; Munoz: $93,828.00; Gonzalez: $70,479; and Orbillo: $28,044.00.

E.    **Post-judgment motions**

Defendants filed documents titled "Objection to proposed judgment and judgment and motion to apply statute of limitations." They argued that the judgments ignored the statute

---

[4] The judgment against Gregory Garcia does not appear to be in the record on appeal.

12

of limitations and resulted in "a manifest injustice." Defendants insisted they had not waived the statute of limitations defense, and asserted that the jury was supposed to determine "only the question of the value of services rendered," not "the applicability of the statute of limitations." Defense counsel asked that if the court could not address the statute of limitations through a motion, that it "order a phase two" trial on the issue. Defense counsel included information received from plaintiffs' counsel, which they contended confirmed that certain treatments and services occurred outside the statute of limitations period. Defendants also re-filed their motions for a directed verdict.

Plaintiffs filed a written response to defendants' objection, stating that defendants stipulated that judgments would be entered based on the values the juries determined. Plaintiffs pointed out that in the stipulation following the status conference, the parties agreed "that if the jury determines the reasonable value to be greater than zero for any of the above services or fees, the value for each service of fee as determined by the jury shall be calculated by the Court based upon the herein stipulated number of the services and/or fees in dispute for each defendant and will be Plaintiffs' damages and the judgment entered by the Court." Plaintiffs accused defendants of trying to "renege on the stipulated agreement." Plaintiffs also argued that defendants' statute of limitations motion was untimely, and defendants failed to prove the statute of limitations defense at trial. Plaintiffs argued that defendants therefore waived any statute of limitations defense.

At the August 20 hearing, after the court and parties discussed prejudgment interest on the judgments, defense counsel pointed out that defendants filed "a motion for directed

13

verdict and a motion for judgment of nonsuit. And the court had not ruled on those." The court responded, "Both motions are denied." Defense counsel also said the court scheduled a hearing to discuss the judgments, but the court signed the judgments before defendants had time to object. The court said, "After the judgment's been signed, you have other remedies that you have to take." The court continued, "You can't – I mean, yes, you can object to the judgment, but that's not how you do it." The court added, "After it's been signed, after the judgment has been entered, you have very specific remedies." Defense counsel said, "Move to set aside, correct, your honor." The court and parties then discussed other matters. The record does not contain written rulings on the motion for nonsuit, motion for directed verdict, or defendants' post-judgment objection.

Defendants timely appealed.

## DISCUSSION

Defendants contend their motions for summary adjudication should have been granted on the basis that plaintiffs' quantum meruit claims were time-barred. They also assert that the trial court should have granted their motions during and after trial. We find that defendants did not move for summary adjudication on the grounds that the quantum meruit claims were untimely, and therefore defendants have not demonstrated that the court erred by denying those motions. However, we find that the court erred in entering judgment while the statute of limitations issue was outstanding, without allowing the parties the opportunity to fully litigate the issue. We therefore reverse the judgment and remand the case for the trial court to determine the statute of limitations issue in the first instance.

14

## A. Motions for summary adjudication

Defendants assert that the trial court "should have granted" summary adjudication "as to plaintiffs' quantum meruit claim." They argue that the services rendered to defendants fell either partially or completely outside the two-year statute of limitations for quantum meruit, and defendants failed to plead or prove facts to support tolling. Defendants assert that plaintiffs' opposition failed "to meet their burden to establish that an exception to the statute of limitations applied."

We review de novo a ruling on a motion for summary adjudication. (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273.) Even under a de novo review, however, the appellant has the burden of demonstrating error. (*Tubbs v. Berkowitz* (2020) 47 Cal.App.5th 548, 554.) Defendants have not met that burden.

Defendants' argument overlooks a critical fact: They did not seek summary adjudication of the quantum meruit cause of action. It is well established that summary adjudication cannot be granted on an issue that is not clearly set forth in the moving papers. (See, e.g., *San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal.App.4th 308, 316 ["Where a remedy as drastic as summary [adjudication] is involved, due process requires a party be fully advised of the issues to be addressed and be given adequate notice of what facts it must rebut in order to prevail."].)

Here, defendants' motions sought summary adjudication only of the breach of contract and open book account causes of action. "If summary adjudication is sought, . . . the specific cause of action, affirmative defense, claims for damages, or issues of duty must be stated specifically in the notice of motion and be

15

repeated, verbatim, in the separate statement of undisputed material facts." (Cal. Rules of Court, rule 3.1350(b); see also *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1214 ["the undisputed material fact . . . must appear in the separate statement or be disregarded"].) Although defendants mentioned the statute of limitations for quantum meruit in their notice of motion, neither their memoranda of points and authorities nor their separate statements discussed the statute of limitations for quantum meruit or requested that the court rule on the issue.

Moreover, when a motion for summary adjudication is based on the assertion of an affirmative defense, the defendant has the initial burden to demonstrate that undisputed facts support each element of the affirmative defense. (*Dailey v. City of San Diego* (2013) 223 Cal.App.4th 237, 249.) If the defendant fails to meet that burden, "'the plaintiff need not make any showing at all.'" (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 469.) Defendants argue on appeal that *plaintiffs* failed to meet their burden in their oppositions to demonstrate that their quantum meruit claims were timely. But plaintiffs were not required to show their claims were timely, because defendants did not present argument or evidence sufficient to shift the burden to plaintiffs on this issue.

Appellants therefore cannot establish on appeal that the trial court erred by denying summary adjudication of plaintiffs' quantum meruit cause of action.

## B. Defendants' motions during and after trial

Defendants assert that plaintiffs' quantum meruit claims were time-barred on their face and as a matter of law because plaintiffs failed to plead and prove that their claims were timely,

16

so the court should not have entered judgment in plaintiffs' favor. They also argue that the trial court erred in denying their motions based on the statute of limitations during and after trial. Plaintiffs, on the other hand, assert that defendants waived the statute of limitations defense by stipulating to the limited scope of the trial, and not asserting the defense in a timely manner. We find the court erred by telling the parties the issue would be addressed after trial, then entering judgments without deciding the matter. Because resolution of the issue relies on disputed facts, it should be determined by the trial court in the first instance, and we remand for that purpose.

Neither party approached the statute of limitations in a straightforward manner in this case, and as a result the issue was touched upon multiple times but never squarely addressed. Plaintiffs alleged in their complaints that they were attempting to collect fees for services provided up to eight years before the complaints were filed, but they did not allege any facts supporting delayed discovery or tolling. (See, e.g., *Ponderosa Homes, Inc. v. City of San Ramon* (1994) 23 Cal.App.4th 1761, 1768 ["When a complaint shows on its face or on the basis of judicially noticeable facts that the cause of action is barred by the applicable statute of limitations, the plaintiff must plead facts which show an excuse, tolling, or some other basis for avoiding the statutory bar"].)

Defendants included statute of limitations defenses in their answers, but did not demur or move for judgment on the pleadings on that basis. And as discussed above, their summary adjudication motions mentioned the statute of limitations for quantum meruit, but did not actually seek adjudication of that issue. Plaintiffs directly addressed the statute of limitations

17

issue for some causes of action in their oppositions to the motions for summary adjudication, but the court denied the motions without addressing the issue.

Both sides therefore knew the timeliness of plaintiffs' claims was disputed and potentially dispositive of at least a portion of the case. Nevertheless, neither of the two pretrial stipulations directly addressed the issue. Although the parties expressly agreed plaintiffs would dismiss their breach of contract and open book account causes of action, they failed to address either the timeliness of the quantum meruit claim or the pertinent statute of limitations. The parties dispute the reasons for this. Plaintiffs argue that defendants' waiver is implicit, and characterize the stipulations as a fraudulent quid pro quo in negotiating the scope of the jury trial: "defendants were successful in having Ghadimi abandon his contract claims with their longer statute of limitations." They argue that defendants' later assertion of the statute of limitations at trial constituted "sandbagging."

However, defendants point out that *the court* suggested the breach of contract claims be dismissed, and plaintiffs dismissed these claims after the jury in the Mitre case found no damages on plaintiffs' breach of contract cause of action. Defendants sought a ruling on the issue from the court and stated in their post-trial motions that they had not waived this defense. It is therefore not clear whether the parties intended the stipulation to waive defendants' statute of limitations defense. (See, e.g., *Cuenca v. Cohen* (2017) 8 Cal.App.5th 200, 222 [stipulations are interpreted as contracts to give effect to the mutual intention of the parties at the time the stipulation was formed]; *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 381 [parties' unexpressed

18

intentions or understandings are irrelevant to contract interpretation].)

When defendants asserted the statute of limitations during trial, the court stated that the issue would be addressed after trial. The court and parties—including plaintiffs' counsel—all agreed. Again the issue was not directly addressed, because although the court set a briefing schedule, the court entered judgment before the briefing was due.

"The statute of limitations operates in an action as an affirmative defense." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396.) Thus, "a defendant must prove the facts necessary to enjoy the benefit of a statute of limitations." (*Samuels v. Mix* (1999) 22 Cal.4th 1, 10.) Defendants were deprived of the opportunity to present facts regarding the timing of the statute of limitations to a factfinder below, either to the jury (because the scope of the trial was limited) or the court, which said it would address the statute of limitations issue later, but did not. Plaintiffs, on the other hand, dispute that their claims are time-barred, asserting that their efforts to collect payments from the insurance company and defendants themselves affected the accrual of the statute of limitations. Plaintiffs also did not have the opportunity to develop this argument or have the court rule on it. The parties also never presented evidence to the trial court regarding defendants' purported waiver of this defense.

We decline to decide these disputed issues of fact from a record in which the parties were denied the opportunity to develop their positions. The trial court erred by entering judgment before the parties were able to fully litigate an outstanding dispositive issue. We therefore reverse the judgments, and remand the case for the trial court to determine

19

the statute of limitations issue in the first instance.  (See, e.g., *In re Zeth S.* (2003) 31 Cal.4th 396, 405 ("'it is the province of the trial court to decide questions of fact,'" and "'[a]bsent exceptional circumstances, no such findings should be made'" in the appellate court].)[5]

## DISPOSITION

The judgments are reversed.  Defendants are entitled to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


MANELLA, P. J.


CURREY, J.

---

[5] Plaintiffs' motion to dismiss the appeal and motion for sanctions are denied.